HARPER *v.* STATE.

Opinion delivered July 9, 1906.

1. CONTINUANCES—DISCRETION OF COURT.—Continuances in criminal, as as in civil, cases are, as a general rule, within the sound discretion of the trial court, and a refusal to grant a continuance in a criminal case is never a ground for a new trial unless it is made to appear that such discretion has been abused to the prejudice of appellant. (Page 600.)

2. SAME.—A continuance will not be granted in a murder case at the defendant's instance on account of the absence of a witness who, if present, would testify that the State's principal witness had gone through the neighborhood where the killing occurred and had endeavored to incite people to join him in mob violence on defendant, and had made many threats of violence against defendant, if the State's witness on his cross-examination was not asked about such alleged conduct. (Page 600.)

3. EVIDENCE—THREATS.—Threats of violence toward defendant, alleged to have been made by deceased, unaccompanied with overt acts showing an intent to carry them into effect, are competent in a murder

case only to show deceased's character for violence and his disposition of mind toward defendant, to be considered in determining who was the aggressor. (Page 600.)

4. CONTINUANCE—CUMULATIVE TESTIMONY.—A continuance asked on account of the absence of witnesses whose testimony would have been merely cumulative was properly refused. (Page 601.)

5. APPEAL—HARMLESS ERROR.—A new trial will not be granted because the court assigned an erroneous reason for refusing a continuance if there was no prejudicial error in the refusal itself. (Page 602.)

6. EVIDENCE—ACTS AND DECLARATIONS OF CONSPIRATORS.—Where there was evidence that appellant, accused of murder, had entered into a conspiracy with his father and brother to kill deceased, the acts and declarations of his father and brother, done and made in furtherance of the conspiracy and while it was in progress, were competent. (Page 603.)

Appeal from Craighead Circuit Court; *Allen Hughes,* Judge; affirmed

STATEMENT BY THE COURT.

Appellant was indicted at the December term (December 20), 1905, of the circuit court for the Chickasawba District of Mississippi County for the murder of Eulick Knight. The indictment contained two counts, the first count charging him with murder in the first degree, and the second count charging him with being accessory before the fact to murder in the first degree, alleging that James and Ches. Harper murdered Eulick Knight, and that he aided and abetted and assisted therein.

The cause was continued on motion of appellant to February 12, 1906. On this day the venue was changed to the Craighead Circuit Court. When the case was called for trial in the Craighead Circuit Court on the 26th day of February, 1906, the appellant filed the following motion for continuance:

"Come the defendants, James Harper, Ches. Harper and Ves. Harper, and move the court for a continuance in this cause, and for cause state that they can not safely go to trial at the present term of this court on account of the absence of Frank Neely, Gabe Owens, Jesse Smotherman, Jack Sutton, Jack Biddle and Howard Cable. If Frank Neely and Gabe Owens were present, they would testify that the State's principal witness. Wm. Dycus, on the night of the third day after the killing of Eulick Knight, the crime for which these defendants stand indicted in this cause,

was going through the neighborhood in the vicinity where the said Eulick Knight was killed, trying to incite many citizens to join him in a mob to go to Osceola, about ten miles away, and where these defendants were at that time confined in jail, and take them out and mob them, and that the said Wm. Dycus was making and did make many threats of violence about each of these defendants, and showed great prejudice against each of them. If Jesse Smotherman were present, he would testify that, about one month before the killing of Eulick Knight, the said Eulick Knight borrowed a loaded pistol from Lum Carney, with which he said he meant to kill both Ves. and Jas. Harper within 48 hours. He would also testify that about three weeks before the killing, at a crossroads, the defendants Ches. Harper and Jas. Harper came in view and missed meeting Eulick Knight in the due course of their journey about 40 or 50 yards, that he saw Eulick Knight unbutton his vest and place his hand upon a six-shooter pistol, and say that he was going to kill both the said Ches. and Jas. Harper then and there. And, if Jack Sutton were present, defendants could prove the same material facts by him as above stated could be proved by Jesse Smotherman, and in addition thereto he would testify that he had seen the deceased, Eulick Knight, on two occasions within two months of this tragedy, with a loaded pistol, and had heard him make threats of violence against both Ves. and James Harper, and say that he would kill them both, and that at the May, 1905, term of the circuit court at Blytheville, the deceased, Eulick Knight, attempted violently to assault the defendant, James Harper, at a time when the said James Harper did not know of his presence, and was not aware that such attempted assault was being made, and that bystanders had to interfere, and did interfere, and held the said Eulick Knight to prevent his making a murderous assault on the defendant, James Harper. If Jack Biddle were present, he would testify that he heard Eulick Knight, within three months before his death, say that, if defendant Ves. Harper did not deed him a one-half interest in his tract of land, he would kill him like a damned dog. If Howard Cable were present, he would testify that he carried a note late in the evening before the killing of Eulick Knight the next morning from Eulick Knight to the defendant. That all of the above-mentioned acts of hostility and

threats of the said Eulick Knight were communicated to each of the defendants before the said Eulick Knight was killed. That these defendants were indicted and arraigned on the——day of December, 1905, and on the said day they caused to be issued subpoenas for each of the above-named witnesses. That Howard Cable, Jesse Smotherman and Frank Neely had been subpoenaed, and that Jack Sutton is temporarily absent in the State of Mississippi. That Frank Neely is sick and temporarily in a hospital in Memphis, Tenn. That Gabe Owens is temporarily absent, is at present at Owensboro, Ky. That Jesse Smotherman is sick at his home in Mississippi County, Arkansas, and is unable to attend the present term of this court. That Howard Cable, defendants are informed, is unable to be present because he has no money with which to pay his expenses; that Jack Biddle is temporarily absent, and is at present at Gates, Tenn. That these defendants can not prove the facts above set out by any other person except these witnesses named, and that all the facts above set out these affiants believe to be true, and that none of the said witnesses are absent by the consent, connivance or procurement of any of these defendants. That all of these defendants have been continuously confined in jail since their arrest in August, 1905; and if they are given until the next term of this court, they will be able to have service of process had on each of the above-named witnesses who are now out of the State of Arkansas, and have them in court to testify in their behalf. Defendants allege that each of the said witnesses are *bona fide* residents and citizens of Mississippi County, Arkansas, and that in a short while each of them will be back at his respective home in the neighborhood where they and these defendants reside, and where the killing of Eulick Knight took place. Wherefore these defendants pray that this cause be continued until the next term of this court, to the end that they may have a fair and full investigation of their cause."

The motion was duly verified.

In resisting the motion for continuance, the prosecuting attorney admitted that Jesse Smotherman was too sick to attend at that term of the court, but further on he stated to the court that, if the defendant were forced to a trial, he would have witness Smotherman present to testify for the defendant. It was also

admitted by counsel for the State that witness Frank Neely was out of the State.  The prosecuting attorney offered to let attorneys for the defense read the motion for continuance as the deposition of the absent witnesses named therein, which offer was refused by attorneys for defendant.

The court overruled the motion, stating that it was "of the opinion that both sides were as ready for trial as they would be at another term, owing to the distance they had to come and the number of witnesses in attendance upon the court," and offered to permit attorneys for the defendant to read the motion for continuance as the despositions of the witnesses named therein.  The court gave, as one reason why the motion was overruled, that attorneys for defendant had had time to take the depositions of the witnesses named who were absent on account of sickness, whereupon the attorneys for the defendant made affidavit that neither of them knew that witness Frank Neely was sick, or in a hospital in Memphis, Tenn., until the cause was called for trial at that term, and they renewed their application for continuance, and the court refused it, to which they excepted.

The motion for continuance was not read in evidence.  The record recites:  "At the close of the evidence nothing was said by any one about election, and the matter did not occur to the court until after the opening argument of the prosecuting attorney had been made, when election was immediately ordered and made."  Also the following:  "After the trial was concluded and the prosecuting attorney, L. C. Going, had made his opening speech to the jury, he made his election to try defendant on count one, charging the defendant with murder in the first degree."  But following these recitals is another recital showing that the attorneys for defendant moved the court to have the district attorney to elect before the selection of the jury "on which count of the indictment he would go to trial."  Still another recital following this shows that the attorneys for defendant moved the court to compel the prosecuting attorney, "after the selection of the jury and before the trial began, to elect on which count of the indictment he would put defendant to trial," which motion was by the court overruled.

The record recites that "during the opening argument of the prosecuting attorney" he argued at length the evidence tending to

show the connection of Ches. Harper and James Harper with the killing of Eulick Knight, and showing and tending to show a conspiracy on the part of the three Harpers to do the killing, saying, among other things, that "all of them were present and helped to do the killing, and that it was the dirtiest and most damnable conspiracy that was ever formed. That it made no difference which one of them did the killing, as they were all in a conspiracy, and all guilty alike." But the record further shows that: "No objection was made to this argument, nor was it called to the attention of the court in any way."

The testimony of William Dycus, who was the only eyewitness to the killing, and other witnesses on behalf of the State, tended to show that appellant killed Knight by lying in wait. The testimony on behalf of appellant tended to show the killing was done in self-defense.

Defendant was found guilty of murder in the first degree, and has appealed.

*S. R. Simpson,* for appellant.

1. Although the granting of a continuance is within the sound discretion of the court, yet it is error for which a case should be reversed if the court refuses a defendant's application for continuance where he has exercised due diligence and, without fault of his, is deprived of material testimony because of the absence of witnesses. Art. 2, § 10, Const. 1874; 71 Ark. 180; 57 Ark. 168; 60 Ark. 576; 42 Ark. 274. See, also, 20 Tex. App. 134; 18 *Ib.* 72; 19 Tex. 449; 43 Tex. 319; 2 S. W. 622.; 1 S. W. 465; 5 S. W. 283; *Ib.* 826; *Ib.* 829; 7 S. W. 667; 8 S. W. 607; 22 So. 62; 55 S. W. 337. Defendant was entitled to the personal presence of his witnesses before the jury. Kirby's Digest, §2311, and cases cited; 50 Ark. 161. And defendant was entitled either to a continuance or to an admission from the State that the absent witnesses would testify as set out in the motion, and that *it was true.* 58 Ark. 519; 50 Ark. 161.

2. The court erred in refusing to compel the prosecuting attorney to elect, before the trial began, on which count of the indictment he would rely.

*Robert L. Rogers, Attorney General,* and *G. W. Hendricks,* for appellee.

The discretion of the trial court in the matter of continuances will not be disturbed except in case of abuse. 71 Ark. 65. Since the evidence of the witnesses for whom the continuance was sought was only cumulative, it was not error to refuse the continuance. *Ib.* 403.

WOOD, J., (after stating the facts.)   1.   The court did not err in refusing to grant a continuance. "Continuances in criminal as well as civil cases are, as general rule, within the sound discretion of the trial court, and a refusal to grant a continuance in a criminal case is never a ground for a new trial unless it is made to appear that such discretion has been abused to the prejudice of the defendant." *Lane* v. *State,* 67 Ark. 293; *Puckett* v. *State,* 71 Ark. 62; *Allison* v. *State,* 74 Ark. 444, and many cases cited; 1 Crawford's Digest, Continuances, II, c.

As to the witness Frank Neely, conceding that due diligence was used to obtain his testimony, the refusal of the court to continue on account of his absence was not prejudicial error. Appellant expected to prove by him that the State's principal witness, William Dycus, had gone through the neighborhood where the killing occurred and had endeavored to incite people to join him in mob violence on appellant, and had made many threats of violence against him, and had thus manifested great prejudice against him. This would have been competent testimony as affecting the credibility of the witness Dycus. But Dycus was on the stand as a witness, and counsel for appellant did not lay the foundation for the introduction of such evidence by asking Dycus whether or not he did the things alleged in the motion for continuance calling his attention to the time and place. Had such questions been asked him, he might have answered in the affirmative. That would have ended the matter. Other proof would not have been necessary. As he was present, and knew whether or not he had engaged in the conduct, he should have been questioned on the subject. Appellant can not claim to be prejudiced by the refusal of the court to allow witnesses to testify to such conduct on the part of one of the witnesses, when the witness himself was not asked about it, and had not been given the opportunity to either affirm or deny the alleged conduct affecting his credibility as a witness. See section 3138, Kirby's Digest. It appears that appellant did ask this witness on

cross-examination if he had taken an interest in the prosecution against appellant, and if he and some other people "had made up money to employ" counsel in the case to prosecute appellant, and the witness answered that he had. So he may have answered affirmatively the other questions touching his alleged conduct looking to mob violence against appellant, had they been asked him. Appellant is not in a position to claim that he is prejudiced by the refusal of court to grant a continuance on account of the absence of Frank Neely.

By witness Smotherman appellant alleged that he expected to prove that about "one month before the killing' of Eulick Knight, he (Knight) borrowed a pistol from Lum Carney with which he said he meant to kill both Ves. and James Harper within 48 hours." And again that "about three weeks before the killing, at a crossroads, the defendants Ches. Harper and James Harper came in view, and missed meeting Eulick Knight in the due course of their journey about forty or fifty yards, that he saw Eulick Knight unbutton his vest and place his hand upon a six-shooter pistol, and say that he was going to kill both the said Ches. and James Harper then and there." Certainly no prejudice could have resulted to appellant from the refusal of the court to continue the cause on account of the absence of this testimony. It would have shown no more than that deceased had great ill-will toward the Harpers, and that on sundry occasions he made threats of violence against them, and which threats he never put into execution, although it did not appear that there was anything to prevent or restrain him from so doing. The probative result of such testimony would have been bad temper and evil disposition on the part of Knight towards the Harpers manifested by threats simply, without any overt acts showing an intention to carry them out. They were only competent to show the character of Knight for violence, and his disposition of mind toward appellant, and thus were to be considered by the jury in determining who was the aggressor. *Palmore* v. *State*, 29 Ark. 248; *Brown* v. *State*, 55 Ark. 593. But for such purpose they were merely cumulative evidence. So likewise would have been the testimony of Sutton and Biddle, other witnesses named in motion.

The testimony of Felix Pursely for appellant was to the

.effect that a few weeks before Knight was killed the witness heard him say that Ves. Harper had put a tenant on the place, that he (Knight) did not want him there, and that he was going to lick the tenant, and give him a certain number of hours to leave, and if he did not vacate he (Knight) was going to burn down the house. Another witness, Harlow Carwell, testified that "in June before the killing took place, in August, he heard Knight say that if Ves. Harper did not give him a deed to one-half that farm he or Ves. would sleep in the Hatcher grave-yard." And the witness said that Knight's manner convinced him that he was in earnest, and he communicated the conversa-tion to appellant. This, together with the testimony of appellant himself, and of William Dycus as to the quarrel on the evening prior to the morning of the fatal day, showed that appellant and Knight were living in a state of "undisguised hostility." So as to the purported testimony of the absent witness, Jesse Smother-man, appellant suffered no prejudice by a refusal to continue in order to enable him to procure it. However erroneous might be the reasons assigned by the court for refusing the continuance, we find no error prejudicial to appellant in the ruling itself.

2. The other ground urged for reversal is that the court erred in not compelling the prosecuting attorney to elect on which count of the indictment he would stand before the trial began; appellant contending in this connection that all of the testimony in relation to the acts and declarations of his father and brother were prejudicial to him, as likewise was the argument of counsel for the State that they were all in a conspiracy to kill Knight.

Whether the appellant's counsel moved the court to require the prosecuting attorney to elect on which count in the indictment he would proceed before the selection of the jury, and before the trial began, or after the evidence had been concluded and the prosecuting attorney had made his opening argument, it is im-possible to determine from the recitals of the record. For these recitals on this point are contradictory and confusing. But we regard this as wholly immaterial in view of the testimony. The appellant admitted the killing, and there was abundant proof to warrant the conclusion that appellant and his father and brother had formed a conspiracy to kill Knight. Appellant himself says that, after the quarrel the evening before, he told his father and

brother what Knight had done and said, and called on them for protection, and his own evidence shows that they stayed at his house with him that night, after he had sent his wife away, and that they carried a pump shotgun over there. Appellant says he did the shooting with a "pump" gun. True, appellant says they had gone before Knight and Dycus came, and were not present when the killing occurred; but the circumstances as detailed by Dycus and other witnesses made it a question for the jury to say whether or not there was a conspiracy between appellant and his father and brother, Ches., to kill Knight. If there was a conspiracy, it was immaterial when the prosecuting attorney made his election, for the testimony as to the acts and declarations of his father and brother in furtherance of the conspiracy and while it was in progress, were competent (*Benton* v. *State,* 78 Ark. 284) on either count. Therefore we are of the opinion that no prejudice resulted from the failure of the prosecuting attorney to make his election before the trial began. In this view, the testimony of the witnesses and the argument of counsel which appellant sets up as his eleventh and twelfth grounds of the motion for new trial, and of which he so forcefully complains in his brief, could not avail him, even if his objections thereto had been made and duly preserved in the bill of exceptions.

The judgment is affirmed.