## HUGUS *v.* SANDERS.

Opinion delivered May 19, 1924.

1. CONTRACTS—DEFENSE AT LAW.—Failure to perform the conditions of a contract on which the payment of money depends is a good defense at law against a recovery thereof.

2. TRIAL—TRANSFER OF CAUSES.—Causes are transferred from law to equity courts only where the issues are exclusively within the jurisdiction of the latter or the former cannot afford complete and adequate relief.

3. TRIAL—RIGHT TO TRANSFER TO EQUITY.—Where the complaint alleged a sale of an oil lease to defendant, who deposited a check in escrow upon condition that plaintiff complied with the conditions of the contract, and defendant alleged a breach of the agreement, and prayed for cancellation of such agreement and return of the money, the action was one at law for purchase money and not transferable to equity as a suit for specific performance.

4. APPEAL AND ERROR—HARMLESS ERROR.—In an action for the purchase price of land, where there was no dispute as to the validity of the title, an instruction to find for plaintiff if the title was good was harmless.

5. MINES AND MINERALS—RIGHT TO HAVE DEED RECORDED—WAIVER.— Where the purchaser of an oil lease notified the vendor that the contract was ended and demanded the return of his money, he will be held to have waived the right to have a certain quitclaim deed recorded and included in his abstract furnished by the seller.

6. MINES AND MINERALS—JURY QUESTION.—Whether a purchaser's attorneys agreed to approve an abstract required to be furnished subject to their approval if the seller of an oil and gas lease would procure a quitclaim deed from others, and whether such deed was procured within a reasonable time, *held* for the jury on conflicting testimony.

7. Trial—argumentative instruction.—An argumentative instruction singling out and emphasizing particular facts was properly refused.

8. Customs and usages—evidence.—In an action for the purchase price of an oil and gas lease, testimony as to the customary time allowed in the oil business for vendors to perfect titles and abstracts to land was not error in the absence of a showing that the custom prevailed in the particular locality or of a showing as to what the witness' testimony would be.

Appeal from Hot Spring Circuit Court; *Thomas E. Toler,* Judge; affirmed.

*John L. McClellan* and *Gray, Burrow & McDonnell,* for appellants.

1. It was error to refuse to transfer the case to equity. The complaint demands specific performance, *i. e.,* to compel the vendee to accept the lease which he had refused, and pay over the exact purchase money. 5 Pomeroy's Equity Jur., 4th ed. 4875; 126 Ark. 339. That a complaint demands judgment for a sum of money only, does not necessarily stamp the action as one at law. 82 N. Y. S. 686. It is error for the court to require an equitable action to be tried as an action at law. 7 Wash. 431; 35 Pac. 138; 104 Ark. 322, 149 S. W. 101. Where a complaint states an equitable cause of action, or where a defense is interposed which is exclusively cognizable in equity, the case must be transferred to equity. 85 Ark. 208; 87 Ark. 206; *Id.* 142; 36 Ark. 228; 4 Pomeroy's Equity Jur. 4th ed., p. 3461. See also 46 Ark. 272; 95 Ark. 118; C. & M. Digest, §§ 1034, 1044, 1045.

2. The question of title to real property, or the validity of same, is always a question of law for the court, when, as in this case, there is no dispute as to any facts or records constituting or evidencing legal title. 85 N. E. 1107; 71 S. W. 549; 44 C. C., 110.

3. Appellants were entitled to a peremptory instruction. Appellee bound himself, and so admits, to furnish an abstract showing a record title, and we think, in the light of the evidence, that he failed in this. 73 Ore. 356, 144 Pac. 499; 134 Iowa 381, 105 N. W. 155; 119

Iowa 314; 93 N. W. 348; 173 N. W. 677; 214 S. W. 849; 7 A. L. R. 1162, note; 112 Minn. 388, 128 N. W. 459; 153 S. W. 641. On the question of the attorney's approval as a condition precedent, see 119 Ark. 418; 94 Ark. 263; 121 Ark. 482; 151 Ark. 343; 124 S. W. 23; 95 Cal. 626, 30 Pac. 789; 76 Va. 404; 68 Mo. App. 535; 26 N. Y. Supp. 48; 6 R. C. L. 956. An agreement specifying no time implies a reasonable time. 6 R. C. L. 896; 13 Carp. Jur. 791-2, § 1018; 116 Pac. 980; 154 N. W. 835; 63 So. 973; 147 N. W. 577; 223 Fed. 460; 254 Pa. 99, 98 Atl. 785.

*D. D. Glover,* for appellee.

The complaint stated a cause of action at law against both of the appellants, they both being made defendants therein. The Bank of Malvern did not ask that its defense be transferred to equity, at any time. Hugus alone, before filing an answer, moved to transfer to equity, and, the next day following the overruling of that motion, filed an answer, and never thereafter asked to renew the motion or to transfer. C. & M. Dig. § 1035; 52 Ark. 411; 37 Ark. 185; 87 Ark. 206; 104 Ark. 322.

HUMPHREYS, J. Appellee instituted suit against appellants in the circuit court of Hot Spring County, to recover $1,200, the purchase money for an oil and gas lease, alleging that he had performed all the conditions for the sale and purchase of said lease.

Appellant, D. F. Hugus, filed a motion to transfer the cause to the chancery court of said county and a separate answer, alleging, in his motion, that the suit was in effect a suit for a specific performance of the sale and purchase of said lease, and, in his answer, that the lease and money were deposited in escrow with appellant, the Bank of Malvern, to be delivered upon condition that appellee furnish an abstract showing a record title to the land which would meet the approval of appellee's attorneys, Reid, Gray, Burrow & McDonnell, or some member of the firm. That appellee had failed to perform the conditions of the escrow agreement. He prayed for a cancellation of the contract and for a return of the money deposited with the bank.

Appellant, Bank of Malvern, filed a separate answer alleging that it was holding the lease and money under an escrow agreement containing conditions not yet performed, and requested that it be directed to whom it should pay the escrow fund, and that, upon payment of same as directed, it be absolved from liability to either party. It did not join in or file a separate motion to transfer the cause to the chancery court. The court overruled the motion of appellant, D. F. Hugus, to transfer the cause to the chancery court, to which ruling an objection was made and exception saved, whereupon the cause was submitted to the jury upon the pleadings, testimony introduced by the respective parties, and the instructions of the court, which resulted in a judgment in favor of appellee, from which is this appeal.

The record reflects a sharp conflict in the testimony. That introduced by appellee was, in substance, as follows: On the 24th day of April, 1922, appellee agreed to sell an oil and gas lease he had purchased from C. H. Holcomb upon a twenty-acre tract of land in said county to appellant, D. F. Hugus. After the assignment of the lease had been executed by appellee, it was regarded as necessary for his wife to join in the assignment. The parties repaired to the bank where the lease was left, with direction to forward same to appellee's wife, who was in Oklahoma, for her signature. At the time D. F. Hugus drew a draft for $1,200 on his home bank in Louisiana, payable to appellee, which was indorsed and delivered to the bank for collection. The bank was instructed, when the lease was returned and the draft collected, to turn the lease over to D. F. Hugus and to deposit the money to the credit of appellee. At the time the papers were drawn up and left with the bank, appellee was assisting Blaine Holcomb in drilling an oil well about six miles east of Malvern, and instructed the bank to allow his father, M. E. Sanders, to act for him in winding up the lease transaction in case he could not be present. Appellee and his father admitted that he agreed to furnish an abstract showing record title to the land, which

should be examined by the law firm of Reid, Gray, Burrow & McDonnell or any one of them, but denied that he was to do this before he received the purchase money for the lease. Appellee furnished the abstract, however, on the day of the transaction at the bank. They both testified that they did not receive or know of a letter written by Reid, Gray, Burrow & McDonnell to D. F. Hugus on April 29, 1922, pointing out defects in the title and making requirements necessary to perfect same. Blaine Holcomb testified that, after Mr. Burrow examined the abstract, he requested him to get a quitclaim deed from J. P. Allen and wife to himself to clear the title so he could approve same, and, pursuant to the request, he sent to Louisiana and got the deed; that he received it the 17th or 18th of May, 1922, but did not give it to appellee until the 6th day of June following; that he took it to Mr. Burrow's office before that to give it to him, but he was not there; that Mr. Burrow made no other complaint about the title to him. M. E. Sanders testified that Blaine Holcomb told him that Hugus' attorney had requested a quitclaim deed from J. P. Allen and wife, and Holcomb agreed to get it; that he talked to Mr. Burrow about the transaction a time or two and informed him that they were waiting and depending upon Holcomb to get the deed. Appellee testified that he obtained the Allen quitclaim deed from Blaine Holcomb on June 6, 1922, took it to the bank, and was instructed by the cashier to take it to Mr. Burrow; that he took it to his office and found it closed, and then left it at the bank. On June 10, 1922, appellee gave his father a check for $1,200 on the Bank of Malvern, which it refused to pay.

The testimony introduced by appellants was, in substance, as follows: the gas and oil lease in question, together with the purchase money therefor, were deposited with the Bank of Malvern in escrow under agreement that the lease should be delivered to Hugus and the money to appellee when an abstract showing a record title should be furnished by appellee and approved by Hugus' attorneys or one of them. The abstract was fur-

nished and examined by the attorneys, who wrote a letter to D. F. Hugus on April 29, 1922, specifying the requirements necessary to perfect the title. Hugus testified that he delivered the letter and abstract to C. T. Riley, who was interested with him in the lease, with request that he give it to M. E. Sanders so that he might comply with the requirements. T. C. Riley testified that he delivered it to M. E. Sanders and requested him to comply with the requirements at once. The requirements had not been complied with on June 6, 1922. On that date D. F. Hugus notified the bank that the deal was off and the contract canceled on account of the failure of appellee to comply with the escrow agreement. He demanded a return of the money. The bank immediately notified appellee in writing of the position assumed by Hugus. An oil boom was on in the vicinity of Malvern in April when the lease was placed in the bank, but it subsided in June when Hugus declared the deal off and demanded a return of his money. The oil lease market had been active during the interim.

In the course of the trial appellee was permitted, over the objection and exception of appellants, to testify that he knew the title to the tract of land in question was all right because he got another lawyer in Malvern, Henry Berger, to pass on it, and he said it was good; and to prove by Blaine Holcomb that he was acquainted with the title and abstract to the land, and, in his opinion, the same was good.

In the progress of the trial appellants offered to prove by D. F. Hugus, who was an experienced oil man, the customary time allowed in the oil business for vendors to perfect defective titles to lands upon which leases were bought and sold under contracts for abstracts showing record titles. The court excluded the evidence, over their objection and exception.

Appellant's first insistence for a reversal of the judgment is that the court erred in overruling the motion of D. F. Hugus to transfer the cause to the chancery court. It is asserted that the suit is for the specific per-

formance of a contract, and, in addition thereto, that the defenses set up by appellants are exclusively equitable defenses for which complete relief could not be afforded in a court of law. The question presented must be settled on the face of the pleadings. There is no allegation in the complaint necessarily indicating that the suit is for the specific performance of a contract. The complaint alleges, in substance, that appellee sold and assigned an oil lease on a twenty-acre tract of land to D. F. Hugus for $1,200; that, in payment therefor, D. F. Hugus gave him a check for $1,200 on the Bank of Malvern, which he deposited with said bank to be placed to his credit; that, on the tenth day of June following, he drew his personal check on said fund in favor of M. E. Sanders, his father, who indorsed and presented same for payment, which was refused; that he had complied with every condition of his contract with the said D. F. Hugus and the Bank of Malvern, and that he was entitled to a judgment for said amount of money. On the face of the complaint the suit was for the purchase money of an oil lease. The appellants interposed the defense thereto that the oil lease, together with the purchase money therefor, was deposited in the bank under an escrow agreement that the lease should be delivered to D. F. Hugus and the money paid to appellee, when appellee furnished Hugus with an abstract showing a record title which would meet with the approval of his attorneys, Reid, Gray, Burrow & McDonnell, or any one of them, and that said condition had not been complied with. Hugus prayed for a cancellation of the escrow contract and a return of the money, and the Bank of Malvern prayed for direction as to whom it should pay the money and, upon payment of same as directed, to be absolved from liability to either.

A failure to perform conditions upon which the payment of money is dependent is a good defense at law against the recovery thereof. It is argued, however, that the law court could not cancel the escrow contract, adjudge a return of the money and absolve the bank from liability to either party. The only ground upon which the

relief is prayed is that the conditions of the escrow agreement were not performed by the appellee. The result of that issue must determine the course of the escrow fund. If appellee failed to perform the conditions within a reasonable time, a judgment against him of conditions broken would automatically operate to release his claim upon the fund and justify the bank in paying it to Hugus without incurring any liability. If appellee complied with the conditions, a judgment in his favor would take the escrow fund and automatically release the bank from liability. In either event there would be no necessity for an order canceling the escrow contract and protecting the bank from liability. Causes are only transferred from courts of law to the courts of equity where the issues are exclusively within the jurisdiction of the latter, or, if concurrent, where the law court cannot afford complete and adequate relief. The allegations in the separate answers, in effect, present the same defense, are triable at law, and a judgment at law would afford adequate and complete relief to all the parties concerned. The court did not err in overruling the motion to transfer the cause to the chancery court.

Appellant's next insistence for a reversal of the judgment is in giving appellee's requested instruction No. 2. It is as follows: "You are instructed that, if you find from the evidence that the title to the lands was good as shown by the evidence in this case, and you find from the evidence that the plaintiff met the requirements made of him by the plaintiff at the time of the trade, your verdict will be for the plaintiff for the sum of $1,200, with six per cent. interest from the date of the sale to this date."

The instruction is assailed upon the alleged ground that it submits a legal question to the jury for determination. It is contended that there is no dispute as to any facts or records evidencing appellee's title, hence the question of title was one for the court and not for the jury. We think the issue of title was eliminated by the undisputed evidence, so the submission of the sufficiency

of appellee's title to the jury resulted in no prejudice to appellants. According to the undisputed evidence, an abstract of title was furnished, examined and approved, subject to written requirements, the only important one being, according to the tone of the letter, that a quitclaim deed should be procured from J. P. Allen and wife. In fact, no contention is now made that the title itself is defective. The contention is that the quitclaim deed was not procured from Allen and wife within a reasonable time, recorded and included in the abstract. Appellants also complain at the admission of incompetent evidence relating to the sufficiency of the title, but the evidence was not prejudicial, as the sufficiency thereof was eliminated by the undisputed facts above referred to.

Appellant's next insistence for a reversal of the judgment is that the court erred in refusing to give appellant's requested instruction No. 1, which is a peremptory instruction. It is argued that, because the quitclaim deed from Allen and wife was not placed on record, included in the abstract and approved by the attorneys, appellees breached the escrow contract to the effect that he would furnish an abstract showing a record title which would meet the approval of the attorneys. Appellant, Hugus, waived the right to have the quitclaim deed recorded and included in the abstract by notifying the bank and appellee that the contract was at an end and by demanding a return of his money. It would have been useless for appellee to incur the expense of complying with the requirement when appellee had refused in advance to receive the deed and abstract. There was a dispute in the testimony as to whether the attorneys had not agreed to approve the abstract if appellee would procure a quitclaim deed from Allen and wife, and whether the deed was procured within a reasonable time, so, for these reasons, the court properly refused to give the peremptory instruction requested by appellants.

Appellants' next insistence for a reversal of the judgment is that the court erred in refusing to give their requested instruction No. 6, defining what is meant by a

reasonable time and how the rule should be applied. The requested instruction was objectionable because it was argumentative, singled out and emphasized particular facts in the record. The court did not err in refusing to give it.

Appellant's next insistence for a reversal of the judgment is because the court excluded the testimony of D. F. Hugus relating to the customary time in the oil business for vendors to perfect titles and abstracts to lands which they had sold under agreements to furnish abstracts showing record titles. The testimony was properly excluded, on two grounds. First, in qualifying Hugus said he was acquainted with the custom in oil fields in this regard, but made no claim that such custom prevailed in the vicinity of Malvern. Second, it was not shown what his testimony would be upon the subject if permitted to testify.

Appellant's next and last insistence for a reversal of the judgment was the refusal of the court to give their requested instruction No. 2, upon the issue of agency. The court struck out the word "omissions" in one part of the instruction, and appellants claim the effect of the modification was to hold a principal responsible for the acts of his agent but not for his omissions. Appellants are in error as to their construction of the instruction as modified and given. After the modification the instruction embraced the idea that a principal was responsible for the omissions as well as acts of his agent. The instruction as modified and given is as follows: "If you find from the evidence in this case that, during the negotiations and transactions leading up to the agreement between plaintiff and defendants, which is involved in this suit, and in performance of such agreement the plaintiff, B. S. Sanders, was represented by M. E. Sanders, and that M. E. Sanders acted for him, then you are instructed that plaintiff, by bringing this suit, has ratified the actions of the said agent, M. E. Sanders, and is legally bound by such acts the same as if they were done or omitted by him personally."

No error appearing, the judgment is affirmed.