WILLIS *v.* STATE.

4470                                        206 S. W. 2d 3

Opinion delivered December 1, 1947.

*N. A. McDaniel,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. Appellant was charged by information filed by the prosecuting attorney with the crimes of rape and incest, alleged to have been committed by having sexual intercourse with his 15-year-old daughter forcibly and against her will. He was convicted of rape and his punishment fixed by the jury at life imprisonment in the penitentiary.

The first three assignments of error alleged in the motion for a new trial challenge the sufficiency of the evidence to support the verdict. The State's principal reliance for conviction is based on the testimony of the prosecuting witness, the daughter of appellant, who testified that her mother died five years prior to the trial, which was held on May 26th and 27th, 1947. She testified positively that appellant, on several occasions prior to Christmas in 1946, forced her to leave her bed, where she slept with two sisters, and go to his bedroom where he had sexual intercourse with her forcibly and against her will; that he threatened to kill her if she exposed him; and that she was expecting the birth of a child in July and appellant was the father of the child. She also testified that she wanted to go to a doctor, but appellant would not permit her to do so unless he went along; that

she did not know what was wrong with her until appellant took her to the doctor in February, 1947. Appellant gave her some quinine capsules to take prior to the visit to the doctor. There was some corroboration of the testimony of the prosecuting witness by her 13-year-old sister and 19-year-old brother.

On cross-examination the prosecuting witness testified that she went to the picture show on two occasions with Charlie Cross, but that they were accompanied each time by her sisters and other relatives, who were named by the witness. Each occasion occurred more than a year prior to the trial and she had not since these occasions, been with the Cross boy. She denied telling several parties named by the appellant that she did not know who was the father of her expected child, and none of the parties named were called as witnesses to impeach this testimony. She also denied that she conspired with an older brother, who had returned from military service, to "get rid" of her father.

Appellant denied the charges of misconduct made by his daughter and testified that she told him she had been to a doctor twice prior to the examination in February, 1947, and that the doctor told her there was nothing wrong with her. The prosecuting witness threatened to get even with him when he punished her for going out with boys at night. He also testified that his oldest son objected because he refused to permit the prosecuting witness to attend parties and dances.

The guilt or innocence of appellant of the charge of rape was a question for the jury to determine under conflicting testimony. Viewed in the light most favorable to the state, the evidence is sufficient to sustain the verdict.

The principal contention for reversal of the judgment is that the trial court abused its discretion in refusing to grant appellant's motion for a continuance of the case. Information was filed against appellant on February 22, 1947, and the case set for trial for April 14, 1947. At appellant's request a subpoena was issued for several witnesses including one Opal Croslin. The sheriff was unable to obtain service on this witness and filed the

subpoena with the clerk on April 12, 1947, after indicating on the face of the writ that Opal Croslin was "out of town." The return on the back of the subpoena showing service on "the within named" was not signed by the sheriff. When the case was called for trial on April 14, 1947, Opal Croslin was not present. The case was continued to May 26, 1947, on oral motion of appellant and all witnesses present were ordered by the court to appear on that date. Appellant made no inquiry about service of the subpoena on Opal Croslin and her absence was not called to the attention of the court when other witnesses were recognized to appear on May 26th.

When the case was called for trial on May 26, 1947, appellant filed a written motion for continuance because of the absence of Opal Croslin. The motion alleged that, if said witness were present, she would testify that shortly before appellant was arrested she talked to the prosecuting witness who told her: "that if something didn't show up this month that she would have to marry Charlie Cross, that her Daddy was catching on; that he had been suspicious for some time and had been threatening to have her examined and that he is insisting on it so strongly that I am going to have to go and be examined."

While the motion was being considered by the court on May 26, 1947, another subpoena was issued for Opal Croslin and the sheriff of Saline county was informed by officers in White county that the witness was at Bald Knob, Arkansas. The White county officers were directed to bring the witness to Jacksonville in Pulaski county, where they would be met by the Saline county sheriff and the witness returned to Benton to testify in the case. At this point the court ordered the trial to proceed. A jury was selected and opening statements of counsel for the state and defense were made.

When court was resumed on May 27, appellant renewed the motion and further testimony was heard. The sheriff testified that when he arrived at Jacksonville to return the witness, he learned that she had left Bald Knob for Newport in Jackson county before she could

be apprehended by the White county officers. Officers at Newport had been unable to locate the witness.

Counsel for appellant testified that when the case was first called for trial on April 14, he looked at the subpoena filed by the sheriff, but assumed that Opal Croslin was present, having been informed by her brother and others that all witnesses were present. Relying on this information, and the notation on the back of the subpoena, he thought she had been recognized to appear on May 26, with the other witnesses. He talked with other witnesses on May 25, but had never talked with Opal Croslin, and made no inquiry about her at the time he talked with the other witnesses. He talked with Mamie Croslin, the mother-in-law of Opal, and she did not inform counsel that her daughter-in-law was absent from Benton.

The sheriff testified that Mamie Croslin told him that Opal Croslin was out of town when he was trying to serve her with the subpoena prior to April 14. Mamie Croslin also gave him the information that Opal was in Bald Knob on May 26.

There was also testimony that Opal Croslin lived with her family in a trailer and moved about from place to place. One witness testified that he lived near Opal Croslin at Benton and had not seen her for five or six weeks prior to May 26.

After hearing testimony on the motion for continuance, the following occurred: "The Court: After due consideration of the motion for continuance and also the amendment to the motion and after hearing the testimony before the court, the court is of the opinion that due diligence hasn't been exercised as shown on the part of the defendants in securing the witness Opal Croslin, and since the case was called yesterday and set for yesterday and proceedings have been had to the extent a jury has been selected and opening statements have been made by both the State and defendant attorneys, the court feels that he should proceed with the case and the motion for continuance is overruled.

"Mr. McDaniel: Exceptions to the court overruling the motion. Objections for the reason that it was distinctly understood yesterday when we proceeded with the trial of the case upon the condition this witness would be produced and the court said that we would proceed with that understanding.

"The Court: In answer to that the court agreed to that rather than to overrule the motion for continuance with an effort to try to get the witness, but I do not think the court would be justified in continuing the case on the grounds as stated in the motion set forth by the defendant in this case. Objection overruled."

We have repeatedly held that motions for a continuance are addressed to the sound discretion of the trial court, and that there must be an arbitrary and capricious exercise of such discretion to warrant a reversal on account of the denial of such motion. *Miller* v. *State,* 94 Ark. 538, 128 S. W. 353; *Morris* v. *State,* 103 Ark. 352, 147 S. W. 74; *Wilson* v. *State,* 188 Ark. 846, 68 S. W. 2d 100.

Conceding, without deciding, that due diligence was exercised by appellant to obtain the testimony which the motion alleges Opal Croslin would give, if present, the trial court did not commit prejudicial error in refusing to grant the continuance. The statement attributed to the prosecuting witness in the motion would have been competent testimony to impeach her by showing that she had made statements different from her testimony at the trial. Before the impeaching testimony could be offered and become admissible it was incumbent upon appellant to lay the proper foundation for its introduction by inquiring of the prosecuting witness concerning the contradictory statement. Pope's Digest, § 5198. Although the prosecuting witness was questioned about other contradictory statements allegedly made to other parties, she was not asked whether she had a conversation with Opal Croslin in which the statement set out in the motion for continuance was made. Since appellant did not lay the foundation for introduction of the impeaching testimony, he is not in position to claim that he is prejudiced

by the trial court's refusal to grant a continuance on account of the absence of Opal Croslin. *Harper* v. *State,* 79 Ark. 594, 96 S. W. 1003.

Appellant also insists that the court erred in admitting the testimony of a 19-year-old brother of the prosecuting witness when he was asked to tell what he knew about the case, and gave the following answer: "I had an idea it was going on for two or three times, whenever I go in home from town I could see the lights would be off and I could hear somebody run around the floor out of her room and one night I didn't know where I had went to bed and I had went to sleep and Dad was over there setting in the front room and I heard him call [the name of the prosecuting witness] to come here and I never did hear her answer." Appellant did not object to the answer at the time it was given. After the witness had testified further and was excused, appellant objected to the above testimony. It is insisted that the entire answer of the witness was incompetent because the reasons given by him for reaching the conclusion that something "was going on" were insufficient to form a basis of a suspicion. We cannot agree that the answer was incompetent. The witness stated facts upon which he based his conclusion that something was going on between his father and the prosecuting witness. It was proper for the jury to consider these facts. Had a timely objection been made to that part of the answer which stated a conclusion on the part of the witness, the court would doubtless have stricken that part of his answer.

Appellant made general objections to all instructions given at the request of the State, and objected to the court's refusal to give certain instructions requested by him. We have carefully examined these instructions and find that the court fully and correctly declared the applicable law, and that the matters set out in the instructions refused were fully covered in those given.

We find no prejudicial error and the judgment is affirmed.