BAKER *v.* STATE.

4574                               223 S. W. 2d 809

Opinion delivered October 24, 1949.

Rehearing denied November 21, 1949.

852

*Northcutt & Northcutt* and *H. J. Denton,* for appellant.

*Ike Murry,* Attorney General, and *Arnold Adams.* Assistant Attorney General, for appellee.

E<small>D</small>. F. M<small>C</small>F<small>ADDIN</small>, Justice. The appellant, Mrs. Canna Baker, was tried upon an information charging her with "treating a dead body indecently." The State claims that this is an offense at common law. From a conviction and fine of $100 there is this appeal, presenting the issues now to be decided.

I. *Sufficiency of the Evidence.* Giving the evidence for the State its strongest probative value,[1] the following facts are reflected: Ed White was an aged an infirm man drawing old age assistance from the State, which came as a check for $30 dated the first day of each month. With the consent of the county welfare worker, Mrs. Canna Baker provided room, board and personal attention for Ed White, and in return therefor he endorsed and delivered to her his monthly welfare check. Mrs. Baker also cared for several other persons under similar arrangements. Ed White lived in a small cabin on Mrs. Baker's premises a short distance from her home. His welfare check dated December 1, 1948, was received by Mrs. Baker on December 2nd, and—bearing his purported mark—was cashed by her at a local store that afternoon. About 9:00 the night of December 2nd Mrs. Baker reported to the funeral home the death of Ed White. The funeral director, his assistant and two medical doctors examined the body of Ed White, and testified that on December 2nd he had been dead at least five days. Decomposition and other ghastly conditions of the body had occurred.

The State's theory was that Ed White died on November 27th, and that Mrs. Baker kept his body until she received the welfare check on December 2nd; because it was shown that the welfare check dated December 1st would not have been delivered if his death had been known. Mrs. Baker and her witnesses testified that Ed White was alive as late as 3:00 p. m. December 2nd. One witness testified that he saw Ed White sitting in a chair on December 1st. Another witness testified that he saw Ed White seated on the step of his cabin on December 1st, but did not hear him speak or see him move.

We conclude that there was sufficient evidence to take the case to the jury on the question of when Ed White died. If he died on November 27th as contended by the State, then certainly Mrs. Baker kept his body until December 2nd and did not report his death. The

---

[1] This is the well-established rule in appeals by the defendant in criminal cases. See cases collected in West's Arkansas Digest, "Criminal Law," § 1144(13).

various positions of his body on December 1st would tend to show the handling and exposing of a dead body.

II. *The Offense.* It is strenuously insisted that no offense was committed by Mrs. Baker, even if the facts were as previously detailed. We hold that there was an offense committed. This is a prosecution under the common law,[2] and the text writers and adjudicated cases state that such an offense exists at common law.

In 17 C. J. 1148, in discussing offenses against dead bodies, this appears: "At common law it was an offense to treat the dead human body indecently, and various specific offenses were recognized. Ordinarily it is a misdemeanor for one upon whom the duty is imposed of having a dead body buried to refuse or neglect to perform such duty."[3]

Wharton's Criminal Law, 12th Ed., Vol. II, § 1704, says: "Indecency in treatment of a dead human body is an offense at common law, as an insult to public decency. Hence it is indictable to expose such a body without proper burial; . . ."

See, also, Clark and Marshall on the Law of Crimes, § 473; McClain on Criminal Law, Vol. II, § 1165; and Odgers on The Common Law of England, 2nd Ed., Vol. I, p. 16. For adjudicated cases stating the common law, and in accordance with the texts previously quoted, see: Kanavan's case, 1 Maine 226; *Finley* v. *Atlantic Transport Co.*, 220 N. Y. 249, 115 N. E. 715, L. R. A. 1917E, 852 Ann. Cas. 1917D, 726; *State* v. *Bradbury*, 136 Me. 347, 9 Atl. 2d 657; *Rader* v. *Davis*, 154 Ia. 306, 134 N. E. 849, 38 L. R. A. N. S. 131, Ann. Cas. 1914A; and *Thompson* v. *State*, 105 Tenn. 177, 58 S. W. 213.[4]

---

[2] In *State* v. *Phillips Petro. Co.*, 212 Ark. 530, 206 S. W. 2d 771, we said: "In ascertaining the common law, we not only look to our own cases, but we revert to the early English cases, and the early writers on the common law, such as Blackstone, Kent and Bracton. Cases from other American States are also persuasive as to what was the common law."

[3] See, also, 25 C.J.S. 1035.

[4] We have three Arkansas cases involving dead bodies, being: *Security Bank* v. *Costen*, 169 Ark. 173, 273 S. W. 705; *St. L. S. W. Ry. Co.* v. *White*, 192 Ark. 350, 91 S. W. 2d 277; and *Teasley* v. *Thompson*, 204 Ark. 959, 165 S. W. 2d 940; but these cases have no direct bearing on the questions now involved.

An interesting case is that of *Queen* v. *Francis Scott,* Queen's Bench Reports, Vol. II, Adolphus & Ellis, New Series, p. 659; 42 English Common Law Reports 659. In that case Scott, the jailor, held the body of the deceased prisoner, Henry Foster, and refused to surrender it for proper burial until paid some claimed demand. The court held that the jailor was liable to prosecution. So, here, the jury could reasonably have concluded from the evidence that Mrs. Baker held the body of Ed White and had it placed in positions simulating life until she received the welfare check on December 2nd. The county welfare worker testified (and Mrs. Baker did not deny) that Mrs. Baker knew it was her duty to report Ed White's illness or death to the county welfare worker, and that no such notification was given by Mrs. Baker.

Mrs. Baker was not tried for failure to provide burial for Ed White, because the Circuit Court (possibly relying on § 83-308, Ark. Stats of 1947) instructed the jury that Mrs. Baker was relieved from the common law burden of providing burial. Yet the lifting of that burden by statute (if applicable here) left all the more in force on Mrs. Baker, as the caretaker of White, the duty to promptly report his death to the proper authorities. We conclude that the jury was justified in finding Mrs. Baker guilty of committing the common law offense with which she was charged.

Section 1-101, Ark. Stats. of 1947 shows that we have adopted the common law; and under § 41-107, Ark. Stats. the penalty for common law offenses is prescribed. We have other cases wherein common law offenses have been held punishable in the absence of specifically applicable statutes. See *Powell* v. *State,* 133 Ark. 477, 203 S. W. 25, and see the other cases collected and cited following §§ 1-101 and 41-107, Ark. Stats. of 1947.

III. *Other Assignments of Error.* We have examined these, and find them to be without merit:

(a) Mrs. Baker was arrested on April 18th, and was arraigned on May 2nd, so we cannot say that the trial court abused its discretion in overruling the motion for

continuance filed on May 4th, which was the date of the trial. See *Willis* v. *State,* 212 Ark. 403, 206 S. W. 2d 3.

(b) At the time of the arrest, there was no endorsement on the information giving the names of the witnesses for the State; and defendant, in claiming such omission to be fatal, cites § 43-1004, Ark. Stats. of 1947. Assuming—without deciding—that such provision is applicable to informations, nevertheless, the requirement is merely directory. *Cole* v. *State,* 156 Ark. 9, 245 S. W. 303. The names of the witnesses for the State were furnished to defendant in open court on May 2nd, which was the date the defendant sought such information; and under such circumstances, no prejudice was shown to have been suffered by the defendant.

(c) The defendant requested an instruction on reasonable doubt; but insofar as the requested instruction was correct it was covered by the State's instructions Nos. 1, 2 and 8. The trial court is not required to repeat instructions on the same point. *Farr* v. *State,* 99 Ark. 134, 137 S. W. 563. See, also, West's Arkansas Digest, "Criminal Law," §§ 806(1) and 829(1).

(d) The refusal of the trial court to delay the trial for the arrival of the defendant's unsubpoenaed witness was not error. No sufficient diligence was shown. See *Willis* v. *State,* 212 Ark. 403, 206 S. W. 2d 3. Furthermore, the evidence of the desired witness (as stated by defendant's counsel) would have been merely cumulative. See *Pate* v. *State,* 206 Ark. 693, 177 S. W. 2d 933. The defendant had already subpoenaed six witnesses under § 43-2001, Ark. Stats. of 1947, and these six witnesses were present.

(e) The defendant cannot successfully complain of the failure of the Court to instruct the jury on circumstantial evidence, since the defendant did not present to the court any requested instruction. *Cooley* v. *State,* 213 Ark. 503, 211 S. W. 2d 114.

(f) The defendant complains of the refusal of the Court to allow her witness, Mrs. McClure, to answer this

question concerning Mrs. Canna Baker: "During all that time has she ever reported dead bodies . . . ?"

It appears that the purpose of the evidence was to show Mrs. Baker's good character by some specific prior act. For such purpose, the testimony was inadmissible. *Shuffield* v. *State,* 120 Ark. 458, 179 S. W. 650. But regardless of the purpose of the testimony, the record fails to show what Mrs. McClure's answer would have been to the question; and until the offer to prove was definite to that extent, then there is no basis for assignment of error. *Hugus* v. *Sanders,* 164 Ark. 385, 261 S. W. 899; *Kane* v. *Carper,* 206 Ark. 674, 177 S. W. 2d 41.

Finding no error prejudicial to the defendant, the judgment is affirmed.