STATE OF MAINE *vs.* FRANK E. BRADBURY.

York.        Opinion, December 11, 1939.

*Joseph E. Harvey*, County Attorney, for the State.
*Hilary F. Mahaney*, for respondent.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

(DUNN, C. J., sat at argument but did not participate in the decision in this case because of his death on November 10, 1939.)

THAXTER, J.    The respondent, Frank E. Bradbury, lived with an unmarried sister, Harriet, in a two-and-a-half story building situated on Main Street in the City of Saco. They were old people and the last survivors of their family. In June, 1938, Harriet was in failing health. She appears to have suffered some injury from a fall and during the night of June 9 she remained in a reclining chair in the front room of their home. About four o'clock in the morning of June 10 she died. The respondent thereupon built a hot fire in the furnace in the basement of the house, tide a rope around the legs of his sister's body, dragged it down the cellar stairs, shoved it into the furnace and burned it. It was impossible to get it all into the fire box at once, but as the head and shoulders were consumed, he forced it in farther and farther until he was able to close the furnace door. Reverend Ward R. Clark, who lived in the house next door, testified that during the morning of June 10 a heavy, dark smoke, with a very disagreeable odor poured from the chimney of the house. The next day an investigation was made by the authorities, who asked the respondent to show them the remains of his sister. Going to the basement of the house, he took down the crank used for shaking down the furnace, turned over the grates, shovelled out the ashes and said: "If you want to see her, there she is." A few bones were found ; the rest of the body had been consumed.

The indictment charged that the respondent "with force and arms, unlawfully and indecently did take the human body of one Harriet P. Bradbury, and then and there indecently and unlawfully put and place said body in a certain furnace, and then and there did dispose of and destroy the said body of the said Harriet P. Bradbury by burning the same in said furnace, to the great indecency of Christian burial, in evil example to all others in like case offending, against the peace of said State and contrary to the laws of the same."

At the close of the evidence the respondent's counsel filed a motion for a directed verdict which was denied, and after conviction filed a motion in arrest of judgment which was likewise denied. To each of such rulings an exception was taken.

The facts are not in dispute. The motion in arrest of judgment presents the issue as to whether the indictment sets forth any crime, the motion for a directed verdict whether the evidence which sup-

ports the allegations of the indictment establishes any crime. The question in each case is the same.

The offense is not covered by the provisions of R. S. 1930, Chap. 135, Sec. 47, which makes it an offense to disinter, to conceal, to indecently expose, to throw away or to abandon a human body; and it is important to note that the indictment does not charge the violation of any statute. The question for us to decide is whether this was a crime under the common law.

Judge Holmes, in speaking of the common law as applicable to crimes has well said: "The first requirement of a sound body of law is, that it should correspond with the actual feelings and demands of the community, whether right or wrong." Holmes, Common Law, p. 41. And in *Pierce* v. *Proprietors of Swan Point Cemetery*, 10 R. I., 227, a case involving rights of sepulture, the court discusses the application thereto of the principles of the common law and quotes from a report published in 1836 by Joseph Story, Simon Greenleaf and others on the Codification of the Laws of Massachusetts. With reference to the common law, this says in part: " 'In truth, the common law is not in its nature and character an absolutely fixed, inflexible system, like the statute law, providing only for cases of a determinate form, which fall within the letter of the language, in which a particular doctrine or legal proposition is expressed. It is rather a system of elementary principles and of general juridical truths, which are continually expanding with the progress of society, and adapting themselves to the gradual changes of trade and commerce, and the mechanic arts, and the exigencies and usages of the country.' "

It is because the common law gives expression to the changing customs and sentiments of the people that there have been brought within its scope such crimes as blasphemy, open obscenity, and kindred offenses against religion and morality, in short those acts which, being highly indecent, are *contra bonos mores. Rex* v. *Lynn*, 1 Leach's Crown Cases, 497; Bishop's Criminal Law, 9 ed. Chap. 36; 49 Harv. L. Rev. 593.

The proper method for disposal of the dead has been regulated by law from earliest times, on the continent of Europe by the canon law, and in England by the ecclesiastical law. See *Pierce* v. *Proprietors of Swan Point Cemetery*, supra, 235 *et seq.; Larson* v.

*Chase*, 47 Minn., 307, 50 N. W., 238, 14 L. R. A., 85 ; *Anderson* v. *Acheson*, 132 Ia., 744, 110 N. W., 335, 9 L. R. A. (N.S.), 217. But even in England where the subject has been largely committed to the ecclesiastical courts, the principles of the common law have been held applicable and the courts have not hesitated to apply them to give effect to the well recognized customs of the day and age. *Rex* v. *Lynn*, supra ; *Reg* v. *Stewart*, 12 Ad. & E., 773.

In *Reg* v. *Stewart*, supra, 778, the rule is broadly laid down in the following language: "We have no doubt, therefore, that the common law casts on some one the duty of carrying to the grave, decently covered, the dead body of any person dying in such a state of indigence as to leave no funds for that purpose. The feelings and the interests of the living require this, and create the duty : . . . ."

In this country the subject is governed quite largely by statute and where no statutory provision is applicable by the principles of the common law; and the general doctrine laid down in *Reg* v. *Stewart*, supra, modified only by changing usages, has been almost universally followed. *Larson* v. *Chase*, supra ; *Pierce* v. *Proprietors of Swan Point Cemetery*, supra ; *Thompson* v. *State*, 105 Tenn., 177 ; *Patterson* v. *Patterson*, 59 N. Y., 574 ; *Anderson* v. *Acheson*, supra ; Note L. R. A., 1918 D, 281.

In our own state some time before the decision in *Reg* v. *Stewart*, it was held that the indecent disposal of a human body was an offense at common law. *Kanavan's Case*, 1 Me., 226. The second count of the indictment in this case charged that the respondent "unlawfully and indecently took the body" of a child "and threw it into the river, against common decency." The respondent maintained that the offense was not indictable at common law and filed a motion in arrest of judgment. The indictment was held good. The Court said, page 227 :

"From our childhood we all have been accustomed to pay a reverential respect to the sepulchres of our fathers, and to attach a character of sacredness to the grounds dedicated and inclosed as the cemeteries of the dead. Hence, before the late statute of *Massachusetts* was enacted, it was an offense at common law to dig up the bodies of those who had been buried, for the purpose of dissection. It is an outrage upon the public feel-

ings, and torturing to the afflicted relatives of the deceased. If it be a crime thus to disturb the ashes of the dead, it must also be a crime to deprive them of a decent burial, by a disgraceful exposure, or disposal of the body contrary to usages so long sanctioned, and which are so grateful to the wounded hearts of friends and mourners."

This case seems to lay down the doctrine that any disposal of a dead body which is contrary to common decency is an offense at common law. But counsel for the respondent in the case before us argues that cremation is now a well recognized method of disposing of a dead body and cites the case of *Reg* v. *Price*, 12 Q. B. D., 247, as an authority that on the facts of the instant case no crime has been committed. If this case upholds the doctrine for which he contends, it does not represent the law in this country. A careful reading of it, however, satisfies us that the court did not intend to lay down any such principle. The question considered was a very narrow one, "whether," to use the language of the court, "to burn a dead body instead of burying it is in itself an illegal act." The question is answered as follows, page 254: "I am of opinion that a person who burns instead of burying a dead body does not commit a criminal act, unless he does it in such a manner as to amount to a public nuisance at common law." And in the case before us the essence of the offense charged and proved is, not that the body was burned, but that it was indecently burned, in such a manner that, when the facts should in the natural course of events become known, the feelings and natural sentiments of the public would be outraged.

We are satisfied that the indictment charges an offense at common law and that the presiding Justice committed no error in overruling the motion for a directed verdict and the motion in arrest of judgment.

*Exceptions overruled.*