John G. Adams, Petitioner-Appellee,

*v.*

Monroe County Quarterly Court,
sitting as the Beer Board for Monroe County,
Tennessee, et al., etc., Defendant-Appellant.

379 S.W.2d 769

(*Knoxville,* September Term, 1963.)

Opinion filed June 4, 1964.

Joe G. Bagwell, Madisonville, for petitioner-appellee.

WILLIAM E. HOWE, County Attorney, Sweetwater, for defendant-appellant.

MR. JUSTICE WHITE delivered the opinion of the Court.

The chancellor ordered the Beer Board to issue a beer permit to John G. Adams in accordance with the prayer of his petition. From this action the Board has appealed and assigned errors.

The facts are that John G. Adams filed an application with the Monroe County Quarterly Court, sitting as the Beer Board for said County, for a permit to sell beer and requested a hearing thereon. The hearing was granted. Fourteen members of the Board were present, excluding the Chairman.

After hearing the proof in the case the vote of the members present resulted in one vote for the granting of the permit, two votes against the same, and the remaining eleven members of the Board refusing to vote. Based upon this action the permit was denied.

In due course a petition for the writ of certiorari was filed by John G. Adams in the Chancery Court, sitting at Madisonville, in which it was averred that the action of the Beer Board in denying the permit was illegal, arbitrary, capricious and an abuse of the discretion of the Board. The petition averred that the applicant met all of the requirements of the law and the permit should have been issued to him.

Upon the foregoing averments, and others contained in the petition, the writ was granted and a transcript of the record made at the hearing was filed by the County Court Clerk with the Clerk and Master as ordered by the chancellor.

The County Attorney filed an answer for the Beer Board stating among other things that the proposed location for the sale of beer under the permit is within three hundred feet of a public baptismal site on Conasauga Creek, which baptismal site has been used by several churches for many years. For further answer it is claimed

the proposed site is in a remote section of the county, some distance from the county seat, or any other community center, and the Sheriff of Monroe County cannot properly police said location.

It is also contended that the permit should be denied because a majority of the people in the community objected to the issuance of the same, and that the location is on a narrow, crooked county road.

Upon the hearing the transcript of the evidence introduced before the County Beer Board was all of the evi-

dence considered by the court. No other evidence was introduced or offered to be introduced.

In order for the petitioner to obtain a permit to sell beer at the place desired, it was incumbent upon him to meet the requirements of T.C.A. sec. 57-205, the third paragraph thereof being as follows:

"(T)hat no such beverages will be sold except at places were such sale will not cause congestion of traffic or interference with schools, churches, or other places of public gathering, or otherwise interfere with public health, safety and morals; the county court having the right to forbid such storage, sale or manufacture at places within two thousand (2,000) feet of such places of public gatherings in its discretion."

The chancellor held that the applicant had satisfied the requirement of the first, second, fourth and fifth paragraphs of said section according to the proof and according to the answer filed on behalf of the Beer Board. The applicability of the third paragraph of said section is the point in issue.

In considering this matter de novo, the chancellor held:

To justify a denial of this permit the Court would be required to determine from the proof that the operation of the beer tavern at the location involved would cause "congestion of traffic or interference with schools, churches, and other places of public gathering, or otherwise interfere with public health, safety and morals." The Court is unable to find any proof in this record that the sale of beer at the proposed location would be violative of any of the foregoing provisions. The provision of the law which authorized the County Court to

forbid such an operation within two thousand (2,000) feet to places of public gatherings is in the opinion of the Court not violated. It is set forth in the answer that such location is within three hundred (300) feet of a public baptismal site on Conasauga Creek. The Court is unable to conclude or interpret the law to mean that such a baptismal site is contemplated by this statute. It was stated at the hearing that this site was the property of the petitioner herein and that such site consequently had been used by permission of the owner in times past by those religious bodies that practice baptism by immersion. It seems to the Court that to hold such location which contains no building or edifice of any kind to be a public gathering place as set out in the law would be a strained construction. There is no showing in the record by the proof introduced that this particular location would be violative of health, safety and morals to any greater extent than any rural location that might be proposed. To deny this application upon these grounds would be tantamount to holding that a permit issued for any location would be violative of these provisions. Many people so view it, but such is not the law. Neither is it the law that said permit should be denied as set forth in the answer because a majority of the people of the community object to the issuance of the permit.

In the case of *Cantrell v. DeKalb County Beer Board,* 213 Tenn. 568, 376 S.W.2d 480 (1964), it is said that this Court considers an appeal from the action of the trial court in denying or granting a beer permit de novo accompanied by a presumption of the correctness of the judgment, and such judgment may be overturned only by a preponderance of the evidence. The burden in this Court

is on the Board to show that the evidence does preponderate against the judgment of the chancellor.

■ From our reading of the record we conclude that the chancellor was eminently correct in his ruling on the facts of the case.

The Beer Board contends that "a baptismal site generally known and repeatedly used over a long period of time for this purpose constitutes, and is, a public gathering place within the meaning of the aforesaid statute."

As held by the chancellor in his opinion, it was stated at the hearing before the Beer Board that the baptismal site was on the property of the petitioner, John G. Adams, and that such site had been used by permission of the owner in times past for baptism by immersion.

■ It may be that the public has gathered at this particular site over a period of several years, but according to the proof, this gathering is on private property and such property is owned by the petitioner herein, John G. Adams. If this is true, and we have to assume that it is under the state of this record, then John G. Adams could forbid the use of the site for baptismal purposes. Then, too, we hold from this record that this is not a public gathering place within the meaning of the aforesaid statute so as to preclude the sale of beer as petitioned for by Adams.

Black's Law Dictionary, 4th Ed., defines a public place as

"A place to which the general public has a right to resort, not necessarily a place devoted solely to the uses of the public, but a place which is in point of fact public rather than private, a place visited by many

persons and usually accessible to the neighboring public." *People v. Whitman,* 178 App.Div. 193, 165 N.Y.S. 148, 149. *Roach v. Eugene,* 23 Or. 376, 31 P. 825.

·The record shows that the public has no *right* to use the site indicated for baptismal purposes, and according to the proof such site was used with and by permission and consent of the owner which would, of course, take away from it any element of being a public place. It is, in fact, private property to which access has been given to the public on occasions over a long period of time, but this permission has not ripened into an absolute right to use the  same as a baptismal place by the general public so as to make it a public gathering place.

We have considered all of the assignments of error to the action of the chancellor and find them to be without merit.

Affirmed.

BURNETT, CHIEF JUSTICE, and FELTS, DYER and HOLMES, JUSTICES, concur.