433 P.2d 231

STATE of New Mexico, Plaintiff-Appellee,

v.

Paul S. HARTZLER, Defendant-Appellant.

No. 55.

Court of Appeals of New Mexico.

Oct. 20, 1967.

George L. Zimmerman, Alamogordo, for appellant.

Boston E. Witt, Atty. Gen., Gary O'-Dowd, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

OMAN, Judge.

Defendant was charged in a justice of the peace court with having committed the common law misdemeanor of "indecent handling of a dead body." He pleaded guilty, but subsequently appealed to the district court, wherein he entered a plea of not guilty.

Upon trial in the district court he was found guilty, and a judgment and sentence were entered accordingly. He has now appealed to this court from that judgment and sentence.

He relies upon four points for reversal. We shall consider these points in the order of their presentation in the briefs.

He first asserts that he was not charged with a common law offense, and that, in fact, he was not convicted and sentenced for the indecent handling of a dead body, but rather for other acts of omission and commission set out in the complaint.

By stipulation of the facts and proceedings it is agreed, and defendant has asserted in the "Statement of Proceedings" in his brief in chief, that he "was charged with committing the common law petty misdemeanor of 'indecent handling of a dead body.'" In his argument before this court he conceded that such a common law crime exists and is punishable in this state.

It is expressly provided in § 40A–1–3, N.M.S.A.1953 (Repl.1964) that:

"In criminal case where no provision of this code [criminal code] is applicable, the common law, as recognized by the United States and several states of the Union, shall govern."

In construing a similar provision of our earlier statutes, the New Mexico Supreme Court in Ex parte DeVore, 18 N.M. 246, 136 P. 47 (1913) held:

"* * * that the territorial Legislature adopted the common law, as the rule of practice and decision in criminal cases, thereby incorporating into the body of our law the common law, *lex non scripta* of England, and such British statutes of a general nature not local to that kingdom, nor in conflict with the Constitution or laws of the United States, nor of this territory, which were applicable to our condition and circumstances, and which were in force at the time of our separation from the mother country. * * *"

In the DeVore case the defendant's conviction of the common law felony of "breach of prison" was upheld.

As above stated, it was stipulated and defendant asserted in his brief in chief that he was charged and convicted of the common law petty misdemeanor of "indecent handling of a dead body." However, he argues that he was charged with at least one other offense, that of "neglect to bury," and that he was convicted of this offense, rather than that of "indecent handling of a dead body" or "treating a dead body indecently."

The complaint charged defendant with:
"* * * indecently keeping, handling and exposing a dead woman's body, to wit, JERRI ELLEN ULMER, for a period of thirty (30) days, all in Otero County, New Mexico, from the date of death of said JERRI ELLEN ULMER on December 24th, 1966, to January 25th, 1967, with the intent of preventing a decent burial or disposition thereof, and further actively preventing the discovery of the decedent's body for the said thirty (30) day period, causing the indecent handling of the body."

The facts are set forth in the stipulation as follows:

"That on December 24, 1966, Jerri Ellen Ulmer, age 19, died of natural causes at the home of Paul S. Hartzler, age 61, in

the presence of Hartzler and James Ulmer, age 21, husband of Jerri Ellen Ulmer and without the attendance of a licensed physician.

"That the body of Mrs. Ulmer was kept wrapped in a blanket and plastic sheet within the dwelling of Hartzler, located on an 80-acre tract about two miles from La Luz, New Mexico, with the knowledge of Ulmer, Hartzler and six Bible study group members for eight days.

"Ulmer within the first eight days started to dig a grave for his wife's body on the farm but after prayer and meditation by the Bible study group, Ulmer and the others believed that God did not want the body buried.

"Thereafter the body of Mrs. Ulmer was carried by Ulmer and Hartzler one hundred fifty yards to a screened door shed where said body was kept for an additional twenty-two days.

"That on or about the eighth day of non-burial the head darkened and part of the skin had stuck to the plastic sheet surrounding the face.

"That during said thirty days at no time was any mortician, physician, law enforcement officer, coroner or any other person notified with regard to the disposition of said body; and no preservative or chemical was used to preserve or embalm said body.

"That Hartzler was the teacher and spiritual leader of the religious Bible study group which included Mr. and Mrs. Ulmer.

"That the body was not embalmed, preserved or buried because of the religious belief of Ulmer, Hartzler and six members of the Bible study group that Mrs. Ulmer would return to life by act of God and God would need her body for reincarnation.

"That Hartzler, during the thirty-day period of non-burial did not allow Mrs. Ulmer to be discovered by police officers on four occasions when they inquired of him as to her whereabouts.

"The death certificate and autopsy report attached hereto revealed that Mrs. Ulmer died of natural causes, and there was no evidence of foul play, mutilation or molestation of the body."

Only four reported cases in the United States, dealing with the matter of the common law offense of indecent handling of a dead body, have been found by counsel and by us. In the first of these, Kanavan's Case, 1 Me. 205, 1 Greenleaf 226 (1821), the defendant was convicted of unlawfully and indecently taking the body of a child and throwing it into a river, against common decency.

In State v. Bradbury, 136 Me. 347, 9 A.2d 657 (1939) it was charged that defendant:

" * * * 'with force and arms, unlawfully and indecently did take the human body of one Harriet P. Bradbury, and then and there indecently and unlawfully put and place said body in a certain furnace, and then and there did dispose of and destroy the said body of the said Harriet P. Bradbury by burning the same in said furnace, to the great indecency of Christian burial, in evil example to all others in like case offending, against the peace of said State and contrary to the laws of the same.' * * * "

The Supreme Judicial Court of Maine was satisfied that the indictment charged an offense at common law. In commenting on Kanavan's Case, the court stated that that "case seems to lay down the doctrine that any disposal of a dead body which is contrary to common decency is an offense at common law." And, in commenting on the offense then before the court in the Bradbury case, the court stated that: "the essence of the offense charged and proved is, not that the body was burned, but that it was indecently burned, in such a manner that, when the facts should in the natural course of events become known, the feelings and natural sentiments of the public would be outraged."

In Baker v. State, 215 Ark. 851, 223 S.W. 2d 809 (1949), the defendant was tried and convicted of "treating a dead body in-

decently." In this case defendant seemingly kept the body of a decedent for about five days after his death for the purpose of receiving and cashing decedent's old age assistance check in the amount of $30.-00. During these five days the body was placed in different positions simulating life.

There was no evidence of mutilation or other physical violence to the body, and defendant was relieved from the common law burden of providing burial for decedent.

During the five days defendant kept the body before reporting the death "[d]ecomposition and other ghastly conditions of the body had occurred."

The Supreme Court of Arkansas concluded that the jury was justified in finding defendant guilty of the offense of "treating a dead body indecently."

In Commonwealth v. Keller, 35 Pa.D. & C.2d 615 (Quarter Sessions, Lebanon County, 1964), the defendant was indicted and convicted of two counts of a common law misdemeanor, characterized as the "indecent disposition of a dead body." She had taken the dead bodies of two children shortly after their births, which were born to her about eleven months apart, and concealed them in paper cartons or boxes in closets in her home.

The court, in upholding the existence of the offense charged and the conviction of the defendant of this crime, stated in part:

"*  *  * It is true that there is no precedent in this Commonwealth that is on all fours with the facts in this case. Indeed, there is no case at all dealing with the indecent or immoral disposition of a dead body. This does not surprise us. Perhaps for the same reason that the legislators have not passed a criminal statute proscribing such conduct, we have been able to find few factual authorities. It is undeniably the sentiment of people throughout the world that it would be unthinkable to ill treat a dead body.  *  *  *

"*  *  *

"Ever since the existence of man has been evidenced there is also evidence that there existed a standard of decency and respect for the dead and their resting places. *  *  *

"It would seem unnecessary for a further extension of this opinion to rationalize the existence in this community of a well-established and known standard of decency and morality with respect to the disposition and treatment of dead bodies.

*  *  * We thus consider the common law as being sufficiently broad to punish as a misdemeanor, although there may be no exact precedent, any act which directly injuries [sic] or tends to injure the public to such an extent as to require the state to interfere and punish the wrongdoer, as in the case of acts which injuriously affect public morality or obstruct or pervert public justice, or the administration of government: Commonwealth v. Mochan, 177 Pa. Superior Ct. 454. [110 A.2d 788.] It is the common law of this Commonwealth that whatever openly outrages decency and is injurious to public morals is a misdemeanor and punishable at law."

In addition to the foregoing case authority we find it stated in 4 Blackstone, Commentaries, *64 n. 38: "And it is a misdemeanor to arrest a dead body, and thereby prevent a burial in due time."

In 1 Odgers & Odgers, Common Law of England 16 (2d ed. 1920), it is stated: "Again, every householder in whose house a dead body is lying is bound at common law to have it decently interred, if no one else comes forward to undertake the duty. *  *  *"

In 2 Wharton's Criminal Law 1990 (12th ed. 1932), it is stated: "Indecency in treatment of a dead human body is an offense at common law, as an insult to public decency. *  *  *"

Although the language of these text writers differs, just as does the language of the charges filed in the foregoing cited cases, because of reference to different acts of indecency committed upon and with regard

to the dead bodies involved, still it appears clear to us that the offense, which was and is punishable at common law, is that of indecency in the treatment or handling of a dead human body. That which outrages or shocks the public sense of decency and morals, or that which contravenes the established and known public standards of decency and morals, relative to the care, treatment or disposition of a dead human body, is punishable as an act of indecency.

We are of the opinion that the complaint charges, and the defendant was convicted, just as stated in the stipulation and in the brief in chief, of "indecent handling of a dead body." The length of time the body was kept, the manner and places in which it was kept, the obvious facts of changes in and decomposition of the body, and the concealment of the body from the police officers, all evidence failure to conform to the acceptable standards of decency and morals of our society in the treatment or handling of a dead human body.

■ Defendant's second point is that he had no duty under the common law of New Mexico to bury the body of decedent, who was unrelated to him. As above stated, he was not convicted of a failure to bury the body. Regardless of what his duties may have been in this respect, his conduct, as above outlined, constituted substantial evidence of indecency in the treatment or handling of a body. See Baker v. State, supra.

■ His third point is that: "There is no evidence to support the judgment and sentence that the Defendant committed the crime of indecent handling of a dead body."

We have already set forth the stipulated facts showing the manner in which defendant treated or handled the body, and we have also expressed it as our opinion that the evidence is sufficient to support the judgment of conviction.

Defendant's final point is that: "The acts of the Defendant do not coincide with a specific intent to break the law, and Defendant is being convicted and punished for a sincere but erroneous religious belief."

■ It is immaterial that defendant may have acted out of sincere motives and with no evil intent. "[I]f a man deems that to be right which the law pronounces wrong, the mistake does not free him from guilt." State v. Elder, 19 N.M. 393, 404, 143 P. 482, 485 (1914); Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1878).

Contrary to his contention, the defendant is not being convicted and punished for a sincere but erroneous religious belief. He was convicted and sentenced for the commission of the common law criminal offense with which he was charged. He cannot excuse his actions on the basis of his religious beliefs. As stated by the Supreme Court of the United States in Reynolds v. United States, supra, "To permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself. Government could exist only in name under such circumstances."

It follows from what has been stated that the judgment and sentence should be affirmed.

It is so ordered.

SPIESS and WOOD, JJ., concur.