**STATE of Tennessee, Appellant,**

v.

**Sammy Wayne VESTAL, Appellee.**

Supreme Court of Tennessee.

Feb. 17, 1981.

---

William P. Sizer, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for appellant.

Mark D. Slagle, Taylor & Slagle, Johnson City, for appellee.

## OPINION

COOPER, Justice.

Sammy Wayne Vestal was convicted of having violated T.C.A. § 39–2102 by "aban-

doning the body of Sherry Lynn Fleenor on McQueens Knob located in Sullivan County," and was sentenced to serve 11 months and 29 days in the county jail. The Court of Criminal Appeals reversed the conviction and dismissed the case.

Sammy Vestal and two friends, Greg Powers and Doug Moore,[1] took Sherry Lynn Fleenor to Powers' trailer where she smoked marijuana, drank beer, and rapidly drank about a pint of moonshine whiskey. She became quite ill and vomited several times before Vestal left the trailer. Later in the night, Powers and Moore discovered that Miss Fleenor had died. They then took Miss Fleenor's body to McQueen's Knob, a remote mountainous area, and buried it in a shallow grave. Vestal learned of the death and burial and went with Powers and Moore to the grave site to put additional material over the body. Vestal was indicted and convicted of violating § 39–2102, which provides:

*Improper exposition or disposition of dead human body.* Any person who willfully and unnecessarily, and in an improper manner, indecently exposes, throws away, or abandons, any human body, or the remains thereof, in any public place, or in any river, stream, pond, or other place, is guilty of a felony....

The trial court interpreted the statute to prohibit abandonment in any place other than the commonly accepted places of interment of dead bodies.

In the Court of Criminal Appeals, Vestal argued that the area in which the body was abandoned did not come within any of the statutory terms relating to *place* set forth in T.C.A. § 39–2102. The State took the position that the area where the body was abandoned was a "public place" and that the prosecution did not involve the term "other place" because under the statutory construction rule of *ejusdem generis* "other place" referred to some other body of water.[2]

---

1. Powers and Moore pled guilty to the charges against them.

2. The State made this argument to forestall Vestal's contention that a prosecution under the "other place" provision would render the

The Court of Criminal Appeals agreed with the State's analysis of the statute and held that, within the context of T.C.A. § 39–2102, "other place" means "other body of water." The court concluded, and we agree, that the place where the body of Miss Fleenor was abandoned was not a "public place" as the term is generally defined. *See Adams v. Monroe County Quarterly Court*, 214 Tenn. 270, 379 S.W.2d 769 (1964), wherein the court quoted with approval the definition of "public place" found in Black's Law Dictionary as follows:

A place to which the general public has a right to resort, not necessarily a place devoted solely to the uses of the public, but a place which is in point of fact public rather than private, a place visited by many persons and usually accessible to the neighboring public.

The Court of Criminal Appeals reversed the conviction and dismissed the case.

Contrary to the position taken in the Court of Criminal Appeals, the State now insists that "other place" means "any other place," thereby giving a breadth of application to the statute encompassing the act of Vestal. The issue before this court then is whether the statutory language relating to *place* requires abandonment to occur in some *specific place*, as opposed to any place, to constitute an offense.

The State argues that the limitation of "other place" to "other body of water" would result in a statute which allows the most degrading and abusive disposal of a corpse, as long as the perpetrator, through foresight or fortuity, avoids public areas and bodies of water. The contention is that the restriction is illogical and this statute nonsensical if construed so as to allow such offensive conduct to go unpunished.

However, it should be noted that there are other statutes making it a crime to remove or disturb a dead body,[3] to fail to report discovery of a dead body,[4] or to fail to report a death occurring under suspi-

cious, unusual, or unnatural circumstances.[5] Arguably, the acts of Vestal were indictable under each of these statutes had the State chosen to do so.

■ On the other hand, if the State's interpretation is correct, the element of location is abolished. The prior terms of location—"public place, or any river, stream, pond"—became meaningless and superfluous, since all of these would be encompassed by the broad meaning of "other place." This court cannot presume that the legislature intended to place superfluous terms in the statute; and all language in a statute is presumed to have some meaning. *See State v. Northcutt*, 568 S.W.2d 636 (Tenn. Ct.Crim.App. 1978).

The common law rule with respect to disposition of dead bodies is expressed in 22 Am.Jur.2d *Dead Bodies* § 49 at 593 (1965), as "[a]ny disposal of a dead body which is contrary to common decency is an offense at common law." *See also*, Annot., 81 A.L. R.3d 1071, § 2(a) at 1073 (1977), wherein it is pointed out that:

The solemnity and solicitude with which civilized people have attended to the burial of their dead found expression in common law which made disposal of a dead human body in any manner contrary to human decency an offense. To cast a dead body into a river, to cremate a dead body so as to create a public nuisance, and to mutilate a dead body were all offenses at common law.

■ At common law, the place of the indecent disposal of a body was not always important; the substance of the offense was the degrading handling of a human body which offended the public's sense of decency and morals, or which exposed the public to the danger of contagious diseases or contamination of drinking water. *See State v. Hartzler*, 78 N.M. 514, 433 P.2d 231 (1967); *Barker v. State*, 215 Ark. 851, 223 S.W.2d 809 (1949); *State v. Bradbury*, 136

___

statute void for vagueness as a violation of the Due Process Clause.

**3.** T.C.A. § 38–602.

**4.** T.C.A. § 38–605.

**5.** T.C.A. § 38–708.

Me. 347, 9 A.2d 657 (1939). However, in codifying the common law with respect to the "improper exposition or disposition of a dead human body," the legislature added the element of *place* to the offense. The prohibited locations delineated in T.C.A. § 39–2102 are those where the disposal or abandonment of a dead body would be likely to offend the public's sense of decency and morals and to expose the public to danger of contagious diseases or contamination of the water supply. This choice of location evinces legislative intent to protect the public health by prohibiting disposal of dead bodies in locations conducive to the spread of disease; and it is the statute that the State elected as the basis of its prosecution rather than upon the other statutory offences committed by Vestal, or the arguably still existent common law offense of "indecent treatment of a dead body." *See Thompson v. State,* 105 Tenn. 177, 58 S.W. 213 (1900).

▆▆▆ We, therefore, hold that *place* is an essential element of an offence under T.C.A. § 39–2102, and that "other place" means any other place that poses the likelihood of exposing the public to offensive sights and the danger of contagious diseases, or contamination of the water supply. We find no evidence that McQueen's Knob possesses these characteristics. The decision of the Court of Criminal Appeals is affirmed.

FONES and HARBISON, JJ., concur.

DROWOTA, J. and BROCK, C. J., dissent.

DROWOTA, Justice, dissenting.

I respectfully dissent from the opinion of the majority.

The construction the majority places on this statute sacrifices its actual intent in favor of a literal interpretation of certain language contained therein. This approach is not mandated by the rules of statutory construction. As a leading authority has written:

The literal interpretation of the words of an act should not prevail if it creates a result contrary to the apparent intention of the legislature and if the words are sufficiently flexible to admit of a construction which will effectuate the legislative intention. The intention prevails over the letter, and the letter must if possible be read so as to conform to the spirit of the act. "While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and obvious purpose of the laws should not be sacrificed to a literal interpretation of such words."

2A Sutherland's Statutory Construction § 46.07, at 65 (4th ed. 1973).

To discover the intention requires that we look not only to the words in the statute, but to the relevant legal background as well.

*Kanovan's Case,* 1 Me. 205, 1 Greenleaf 226 (1821) is commonly cited for the proposition that any disposal of a dead body which is contrary to common decency is a misdemeanor at common law. In that case, the court convicted the defendant for burying the body of a child by simply throwing it into a river. The gravamen of the offense was the outrage to public decency caused by the indecent disposition of the child's body. Thus, the court justified its decision for which it could cite no statute or direct precedent by saying that "[g]ood morals—decency—our best feelings—the law of the land—all forbid such proceedings . . . . If it be a crime thus to disturb the ashes of the dead, it must also be a crime to deprive them of a decent burial, by a disgraceful exposure or disposal of the body contrary to usages so long sanctioned, and which are so grateful to the hearts of friends and mourners." *Id.* at 227.

Other courts have similarly interpreted the common law misdemeanor for indecent burial as having as its purpose the protection of the public's sense of decency with regard to the burial of human beings. *See e. g., State v. Hartzler,* 78 N.M. 514, 433 P.2d 231 (1967); *Baker v. State,* 215 Ark. 851, 223 S.W.2d 809 (1949); *State v. Bradbury,* 136 Me. 347, 9 A.2d 657 (1939). The majority finds in *Hartzler, Baker* and *Bradbury* support for its proposition that the

common law offense, and, by extension, T.C.A. § 39–2102 are intended to protect public health as well as public morality. While we agree with the majority that the intention of the common law offense does bear directly on the intention evinced in its codification of T.C.A. § 39–2102, we do not find the first mention of public health considerations in any of these cases. In *Hartzler*, for example, a member of a religious sect kept the body of a nineteen year old girl unburied in a shed for thirty days. In affirming his conviction of a common law misdemeanor, the court stated: "That which outrages or shocks the public sense of decency and morals relative to the care, treatment or disposition of a dead human body, is punishable as an act of indecency." 433 P.2d at 235. Similar language is found in *Baker* and *Bradbury*.

In this case, Vestal along with Powers and Moore, both of whom pled guilty to the statutory charges, took the 19 year old victim to a trailer where she was given moonshine. All three men had sexual intercourse with her; she subsequently became ill and began to vomit. She was "pretty sick" when Vestal left the trailer. He admitted that he did nothing to help her when she became sick. She died during the early morning hours of May 13, 1977. Powers and Moore took her to a remote mountainous area where they covered her body with brush. On the following day the three men returned to the mountain to bury the body more effectively. Vestal helped Powers put more dirt on the body. He admitted that this was done in order to conceal the evidence of the crime. About 18 days later the odor of the decomposing body caught the attention of a passer-by who found the body about 80 yards off the road in McQueen's Knob. Neither the victim's mother nor the authorities were notified by the defendant or his companions of the events which took place on May 13 and 14.

There is no question of Vestal's guilt under the common law, for the "place" of the indecent disposal was not important. The substance of the offense was the degrading handling of a human body which offended the public's sense of decency and morals.

## I.

A statute should be construed in light of the pre-existing common law rule which it codified:

It is a familiar rule that a statute is to be construed with reference to the common law, and does not change the common law further than it expressly declares or necessarily implies.

*Harbison v. Briggs Bros. Paint Mfg. Co.*, 209 Tenn. 534, 546, 354 S.W.2d 464 (1962). *See also, Snyder v. McEwen*, 148 Tenn. 423, 429, 256 S.W. 434, 436 (1923), in which Chief Justice Grafton Green held that statutes of doubtful meaning "are to be construed as near to the rule and reason of the common law as may be."

T.C.A. § 39–2102 first appeared as § 4848 of the Code of Tennessee of 1858.

Any person who wilfully and unnecessarily, and in an improper manner, indecently exposes, throws away, or abandons any human body or the remains thereof, in any public place, or in any river, stream, pond, or other place, is guilty of a misdemeanor.

In so codifying the common law, there is no indication that the legislature intended to change the purpose of the common law offense. To the contrary, it is significant that the statute appeared in Chapter 8 of the Code of 1858 entitled "Offenses Against Public Morality." It did not appear in Chapter 7 entitled "Offenses Against Public Health."

Since its codification in 1858, the statute has been amended one time. The legislature in 1965 enacted Chapter 53, § 1 of the Public Acts of 1965 making violation of the statute a felony. The amendment was precipitated by a case arising out of Cumberland County in which three persons were charged with indecently disposing of the bodies of two small children, ages 2 and 4, in an abandoned septic tank near Crossville. From my review of the record of the floor debate in the House of Representatives on file in the state archives, it is clear that the legislature thought that a misdemeanor penalty was insufficient for conduct so out-

rageous to the public. (House Debate, February 11, 1965). There was no discussion of the public health effects of the crime. Nor did the outrage reportedly present in Cumberland County stem from the sight of the children's bodies. Moreover, it is clear that the legislature assumed that the alleged conduct of the defendants constituted the statutory crime of indecent burial. Yet under the majority opinion today, these defendants would go unpunished since an abandoned septic tank in the Cumberland Mountains is not a public place, river, stream, pond or other place. Although the legislative history of 1965 cannot be conclusive of the intention of the 1858 statute, it is nevertheless persuasive, especially in conjunction with the background of the statute.

### II.

I would, of course, agree with the majority holding if the statute limited the offense to disposals made in public places, rivers, streams and ponds. The legislature, however, has also included the term "other place." In light of the only legislative intention to be found in the common law, the statute and subsequent legislative history, the term "other place" can only mean that the offense has been committed whenever a body is wilfully and unnecessarily disposed of in an indecent manner, regardless of the location of the disposal.

The majority opinion holds that in codifying the common law the legislature added the element of place to the offense. If this be true, the legislature has enacted a statute which allows, as in this case, the most degrading and abusive disposal of a body, as long as the perpetrator has the foresight to avoid public areas and bodies of water. The majority interpretation not only alters the common law, but alters it in nonsensical fashion.

In *State ex rel. Thomason v. Temple,* 142 Tenn. 466, 220 S.W. 1084, 1086, certain pertinent elementary rules are stated. The Court said: "A statute is to be construed so as to give effect and meaning to every part of the statute, *and words may be modified, altered, or supplied so as to obviate any repugnancy or*

*inconsistency,"* citing cases. And the Court quotes, with approval from 36 Cyc. 1116 and 1128, the rule that if "a literal construction will make the act absurd, or will lead to injustice, the court may properly resort to construction." And again, "In construing a statute, the legislative intent is to be determined from a general view of the whole act, with reference to the subject matter to which it applies and the particular topic under which the language in question is found."

*Tennessee Title Co. v. First Federal Savings & Loan Ass'n,* 185 Tenn. 145, 203 S.W.2d 697 (1947) (emphasis added).

I do not believe the legislature intended the place of abuse to be an element of the offense. Rather, I believe the term "other place" means "any place" as it apparently did under the common law rule, and the prior specific terms were included by the legislature merely for emphasis. The statute certainly does not expressly modify the common law rule, nor is such "necessarily implied" by its terms. *Harbison v. Briggs Bros. Paint, supra.*

I would reverse the Court of Criminal Appeals and affirm the conviction of Vestal as found by the trial court.

BROCK, C. J., joins in this dissent.