IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 2000 Session

## STATE v. KENNETH D. MELTON

**Direct Appeal from the Criminal Court for Sumner County**
**No. 1113-1998    Jane Wheatcraft, Judge**

---

**No. M1999-01248-CCA-R3-CD - Filed August 4, 2000**

---

The appellant, Kenneth D. Melton, was convicted by a jury in the Sumner County Criminal Court of disorderly conduct, a class C misdemeanor. The trial court imposed a sentence of thirty days incarceration in the Sumner County Jail. The court then suspended all but five days of the appellant's sentence, placing the appellant on unsupervised probation for the remainder. On appeal, the appellant presents the following issues: (1) whether the indictment provided adequate notice to the appellant of the charged offense; and (2) whether the evidence adduced at trial supports his conviction of disorderly conduct. Following a review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P. J., and JOE G. RILEY, J., joined.

Charles Galbreath, Nashville, Tennessee, for the appellant, Kenneth D. Melton.

Paul G. Summers, Attorney General and Reporter, Todd R. Kelley, Assistant Attorney General, and Thomas Dean, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
### I. Factual Background

On December 9, 1998, a Sumner County Grand Jury indicted the appellant for one count of disorderly conduct. The indictment provided that

> Kenneth D. Melton heretofore on or about the 8th day of September, 1998, . . . did unlawfully and with intent to cause public annoyance or alarm, engage in threatening behavior directed toward Officer Bruce Guldeman . . . In Violation of: TCA § 39-17-305 . . . .

On July 8, 1999, the appellant filed a motion to dismiss the indictment on the ground that the indictment failed to provide adequate notice to the appellant of the charged offense. The trial

court apparently denied the appellant's motion, as the appellant's case proceeded to trial on July 18, 1999.

At trial, the State presented the testimony of Officer Bruce Guldeman, an officer with the Hendersonville Police Department. Officer Guldeman recounted that, on the evening of September 8, 1998, he approached a city park in Hendersonville and noticed a group of people, including the appellant, standing in the parking lot. He additionally noticed that a nearby truck was parked several feet outside the lines demarcating the appropriate parking space, and the rear of the truck was protruding into the street. Accordingly, the officer approached the group and inquired concerning the identity of the owner of the truck. The officer testified at trial that he did not intend to arrest the owner or issue a parking citation. Rather, he merely intended to request that the owner move his vehicle.

In response to the officer's inquiry, the appellant stated that he owned the truck. When the officer informed the appellant that he had parked his truck illegally, the appellant disagreed, adding, "You cops are a bunch of sorry a** b**ches." The officer reiterated that the appellant had parked his truck illegally and indicated that the appellant should move his truck in order to avoid a parking citation. The appellant again objected, calling the officer a "mother f***er" and asserting that he possessed "more money than the officer."

Due to the appellant's refusal to move his truck, Officer Guldeman decided to issue a parking citation. However, when he requested the appellant's driver's license, the appellant "reacted with more hostility and foul language." Repeated requests by the officer for the appellant's driver's license were similarly unavailing. Finally, the appellant got into his truck, shut the door, and attempted to start the engine. Officer Guldeman, uncertain of the appellant's intention, immediately ordered the appellant to get out of his truck and present his driver's license. This time, the appellant complied with the officer's orders.

As the appellant removed his driver's license from his wallet, several friends of the appellant began to direct comments toward both the appellant and the officer. The appellant then threw his driver's license at the officer, hitting Officer Guldeman in the chest. Officer Guldeman testified that he now felt threatened by the appellant and concluded that an arrest was necessary. The officer observed that "thrown items can be used to distract an opponent while attempting to find a means of attack." Moreover, the appellant was more than six feet tall and weighed two hundred and fifty pounds. Accordingly, the officer handcuffed the appellant and radioed for assistance.

Following his arrest and in the absence of his audience of friends, the appellant discontinued his threatening conduct. Nevertheless, Officer Guldeman issued a parking citation to the appellant and charged him with disorderly conduct. The officer asserted at trial that at no time during his encounter with the appellant did he curse at the appellant or otherwise provoke the appellant.

The appellant in turn presented the testimony of two friends who witnessed his

encounter with Officer Guldeman.  In contrast to Officer Guldeman, Jeff Dixon testified that the appellant never cursed at the officer or otherwise threatened the officer.  Moreover, Mr. Dixon denied that the appellant threw his driver's license at the officer, asserting that the driver's license simply fell from the appellant's hand.  Mr. Dixon admitted to the jury that he possesses a juvenile record of adjudications relating to his commission of offenses that would be felonies if committed by an adult.  Jeremy Clark testified that he was too far away from the appellant and the officer to see or hear the details of their encounter.  However, he also asserted his belief that the appellant's driver's license merely fell from the appellant's hand.  He added that the appellant's "large size can make him appear threatening to those persons not familiar with him."

The appellant testified on his own behalf.  He similarly asserted that he never cursed at Officer Guldeman nor threatened the officer, and he denied throwing his driver's license at the officer.  Moreover, he suggested that Officer Guldeman arrested him, because the Hendersonville Police Department was pursuing an "unfounded vendetta" against him.  In support of this theory, the appellant testified that he had previously been charged in Hendersonville with misdemeanor theft, possession of an illegal weapon, and possession of stereo equipment from which the serial number had been removed.  However, he conceded that he pled guilty to the charge of misdemeanor theft and that, although the remaining two charges were ultimately dismissed, he was indeed discovered by police in possession of a "butterfly knife" and the defaced stereo equipment.

Following the presentation of the parties' proof, the jury convicted the appellant of disorderly conduct.  Subsequently, on August 16, 1999, the trial court conducted a sentencing hearing and sentenced the appellant to thirty days incarceration in the Sumner County Jail.  The court suspended all but five days of the appellant's sentence, placing the appellant on unsupervised probation for the remainder.

## II. Analysis

### a.  Sufficiency of the Indictment

On appeal, the appellant contends that the indictment in this case failed to provide him with adequate notice of the charged offense.  Under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Tennessee Constitution, an accused is entitled to notice of the nature and cause of the accusation.  State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997).  In order to satisfy this constitutional mandate, an indictment must provide a defendant with notice of the offense charged, provide the court with an adequate ground upon which a proper judgment may be entered, and provide the defendant with protection against double jeopardy.  State v. Lemacks, 996 S.W.2d 166, 172 (Tenn. 1999); Hill, 954 S.W.2d at 727; State v. Byrd, 820 S.W.2d 739, 740-741 (Tenn. 1991).  Tenn. Code Ann. § 40-13-202 (1997) similarly requires that

> [t]he indictment . . . state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court on conviction, to pronounce the proper judgment .

. . .

Citing both constitutional and statutory mandates, our supreme court has noted the principle, "'as old as the common law,' . . . that the indictment must state 'such facts and circumstances as will constitute the crime, and not merely a legal result' or conclusion." Warden v. State, 381 S.W.2d 244, 245 (Tenn. 1964)(citations omitted).  See also State v. Clark, 2 S.W.3d 233, 236 (Tenn. Crim. App. 1998).  However,

> 'it is not necessary to amplify and encumber the charge by
> circumstantial detail and minute description.'  As a general rule, it
> is sufficient to state the offense charged in the words of the statute,
> or words which are the equivalent to the words contained in the
> statute.

State v. Griffis, 964 S.W.2d 577, 591 (Tenn. Crim. App. 1997)(footnotes omitted).  See also State v. Mitchell, No. 01C01-9612-CR-00502, 1999 WL 559930, at *7 (Tenn. Crim. App. at Nashville, July 30, 1999).  But cf. State v. Cutshaw, 967 S.W.2d 332, 338-339 (Tenn. Crim. App. 1997)(applying *both* Tenn. Code Ann. § 40-13-202 and Tenn. Code Ann. § 40-13-213 (1997), this court held that an indictment tracking the language of the perjury statute was insufficient, as the indictment did not state which of the defendant's actions brought him within the purview of the statute).

Tenn. Code Ann. § 39-17-305 (1997), the statute proscribing disorderly conduct, provides:

> (a) A person commits an offense who, in a public place and with
> intent to cause public annoyance or alarm:
>   (1) Engages in . . . threatening behavior . . . .

In this case, in addition to naming the appellant and the victim and setting forth the date of the appellant's offense, the language of the indictment largely tracks the language of the above statute.  The sole exception is the omission from the indictment of any statement that the offense occurred in a public place.

Generally, an indictment must allege the essential elements of an offense.  Hill, 954 S.W.2d at 725.  Thus, "[w]hile the general rule is that an indictment is not required to allege where the offense was committed, an exception is made when place constitutes a material element of the crime."  State v. Furlough, 797 S.W.2d 631, 641 (Tenn. Crim. App. 1990).  Thus, the court in Furlough dismissed an indictment for unlawful abandonment of a body when the indictment failed to state the place of abandonment.  Id. (citing State v. Vestal, 611 S.W.2d 819 (Tenn. 1981)).  Nevertheless, we have previously noted that "the degree of strictness [of averment] required in a felony indictment is not required in the case of a misdemeanor."  State v. Morgan, 598 S.W.2d 796, 797 (Tenn. Crim. App. 1979).  See also Pope v. State, 528 S.W.2d 54, 57 (Tenn. Crim. App. 1975).  Thus, in State v. Jordan, No. 985, 1987 WL 8415, at *1 (Tenn. Crim. App. at Knoxville, March 26, 1987), this court held that, although an indictment charging a defendant with public drunkenness failed to allege the essential element that the defendant was in a public place, the indictment was nevertheless sufficient.

-4-

Moreover, in Hill, 954 S.W.2d at 727-728, our supreme court signaled its departure from the "traditionally strict pleading requirements" of the common law. The court noted that the purpose of the strict pleading requirements was "the existence of common law offenses whose elements were not easily ascertained by reference to a statute" and further noted that such common law offenses no longer exist. Id. at 728. Indeed, with respect to the mental element of an offense, the court noted that Tenn. Code Ann. § 39-11-301(c) (1997) provides that "when a statute omits reference to a specific mens rea, but does not plainly dispense with a mens rea requirement, then proof of 'intent,' 'knowledge,' or 'recklessness' will suffice . . . ." Id. at 726. Thus, the court held that

> for offenses which neither expressly require nor plainly dispense
> with the requirement for a culpable mental state, an indictment
> which fails to allege such mental state will be sufficient to support
> prosecution and conviction for that offense so long as
>> (1) the language of the indictment is sufficient to
>> meet the constitutional requirements of notice to the
>> accused of the charge against which the accused
>> must defend, adequate basis for entry of a proper
>> judgment, and protection from double jeopardy;
>> (2) the form of the indictment meets the
>> requirements of Tenn. Code Ann. § 40-13-202; and
>> (3) the mental state can be logically inferred from
>> the conduct alleged.

Id. at 726-727. In State v. Carter, 988 S.W.2d 145, 148-149 (Tenn. 1999), the supreme court expanded its holding in Hill. Specifically, the court held in Carter that, even when an offense expressly requires a mental state and assuming the satisfaction of the constitutional and statutory requirements outlined in Hill, a reference to the pertinent statute will, by itself, cure an indictment's omission of the mental state. Id. at 148-149; State v. Smith, 996 S.W.2d 845, 847-848 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1999). In other words, assuming satisfaction of the constitutional and statutory requirements outlined in Hill, an indictment's reference to the pertinent statute will cure the indictment's omission of an essential element of the offense. See also State v. Englet, No. W1999-00283-CCA-R3-CD, 2000 WL 556479, at **2-3 (Tenn. Crim. App. at Jackson, May 8, 2000)(this court held that, notwithstanding the omission of the amount of marijuana, an indictment that charged possession of marijuana with intent to sell was sufficient, because it included a reference to the pertinent statute).

In sum, we conclude that the indictment in the instant case provided constitutionally and statutorily adequate notice to the appellant of the charged offense and provided an adequate basis for the entry of a judgment of conviction and protection against double jeopardy. Moreover, the indictment included a reference to the statute proscribing disorderly conduct. Thus, particularly in light of the lesser standard of averment applied in misdemeanor cases, the indictment was sufficient.

### b.   Sufficiency of the Evidence

The appellant next contends that the evidence adduced at trial was insufficient to

-5-

support his conviction of disorderly conduct. In Tennessee, appellate courts accord considerable weight to the verdict of a jury in a criminal trial. In essence, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that "no reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

As noted previously, in order to convict the appellant, the State was required to prove beyond a reasonable doubt that (1) the appellant engaged in threatening behavior; (2) the appellant intended to cause public annoyance or harm; and (3) the offense occurred in a public place. Tenn. Code Ann. § 39-17-305(a)(1). Relying upon this court's decisions in Garvey v. State, 537 S.W.2d 710 (Tenn. Crim. App. 1975), and State v. Creasy, 885 S.W.2d 829 (Tenn. Crim. App. 1994), the appellant contends that his conduct in this case did not rise to the level of "threatening behavior."

In Garvey, 537 S.W.2d at 710-711, this court interpreted one of several predecessor statutes to Tenn. Code Ann. § 39-17-305. See also Tenn. Code Ann. § 39-17-305, Sentencing Commission Comments. The predecessor statute proscribed "[d]isturbance of the peace," including "'conduct calculated to provoke violence or a violation of the law.'" Id. at 710 (citing Tenn. Code Ann. § 39-1213 (1970)). The court held that, under this statute, the term "conduct" encompassed within its definition language or words. Id. However, consistent with the United States Supreme Court's First Amendment jurisprudence and Article I, Section 19 of the Tennessee Constitution, the court further held that "[t]he language prohibited by this statute is 'fighting' words, 'those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'" Id. (citing Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 769 (1942)). The court then concluded that the defendant's conduct in calling "sooey" to a passing police officer did not rise to the level of "fighting words." Id. at 711. The court explained that the "word" was "addressed to a police officer trained to exercise a higher degree of restraint than the average citizen . . . ." Id.

In Creasy, 885 S.W.2d at 831 (citing Chaplinsky, 315 U.S. at 572, 62 S.Ct. at 769, and Garvey, 537 S.W.2d at 710), this court interpreted the current statute proscribing disorderly conduct and implicitly held that, consistent with the United States Supreme Court's First Amendment jurisprudence and Article I, Section 19 of the Tennessee Constitution, "fighting or . . . violent or threatening behavior" encompasses "fighting words." Tenn. Code Ann. § 39-17-

305(a)(1). The court then examined the defendant's conduct, which included calling a police officer a "'s - - t - b - - l', 'm - - - - - f - - - - -', and 's - - of a b - - - -.'" Id. at 831. Holding the police officer to the heightened standard articulated in Garvey, the court preliminarily observed that, "[t]hough the *words* to the officer were profane and insulting, the defendant neither inflicted injury nor tended to incite an immediate breach of the peace." Id. (emphasis added). However, the court noted that the defendant, in addition to directing profanity at the officer, also clenched his fist as he held his hand to his side and pointed his finger at the police officer. Id. at 832. Moreover, the police officer testified at the defendant's trial that, when the defendant pointed his finger at him, he felt personally threatened. Id. The court concluded that the defendant's words coupled with his conduct in clenching his fist and pointing his finger at the officer constituted "threatening behavior" and supported his conviction of disorderly conduct. Id. at 832.

In upholding the defendant's conviction, the court in Creasy, 885 S.W.2d at 832, specifically distinguished the case of State v. Scott, No. 17, 1989 WL 22736 (Tenn. Crim. App. at Knoxville, March 16, 1989). In Scott, the defendant "'slung a cup of ice across . . . [a parking] lot' and called . . . [a] sheriff 'a fat son of a bitch.'" Id. at *1. The court in Scott concluded that the conduct did not constitute violence or conduct calculated to provoke violence or a violation of the law. Id. at *3 (interpreting Tenn. Code Ann. § 39-6-301(a)(1982), a predecessor statute to Tenn. Code Ann. § 39-17-305). In distinguishing Scott, the court in Creasy noted that there was no evidence in Scott that the defendant threatened physical assault on the sheriff. 885 S.W.2d at 832.

In sum, under the current statute, "fighting or . . . violent or threatening behavior" under Tenn. Code Ann. § 39-17-305(a)(1) includes "fighting words." Furthermore, even if a defendant's obscenity does not rise to the level of "fighting words," the obscenity in conjunction with other behavior may rise to the level of violent or threatening behavior. See, e.g., State v. Bradford, No. 02C01-9701-CR-00042, 1998 WL 30721, at *2 (Tenn. Crim. App. at Jackson, January 29, 1998). Finally, in State v. Millsaps, No. 03C01-9409-CR-00313, 1996 WL 397445, at *2 (Tenn. Crim. App. at Knoxville, July 17, 1996), this court attempted to clarify the distinction between violent or threatening behavior and merely belligerent behavior. The court explained:

> Belligerent actions do not rise to the level of violent or threatening.
> The American Heritage Dictionary of the English Language . . .
> defines "Belligerent" as, "given to or marked by hostile or
> aggressive behavior'. This definition does not rise to the level of
> violent or threatening behavior, which would require an overt act
> or direct threat of harm.

Id.

In Millsaps, two police officers were dispatched to a restaurant pursuant to a report of a disturbance. Id. at *1. Upon arrival, the officers discovered that the disturbance had concluded and also learned that the defendant had been a participant. Id. The officers asked the defendant to accompany them outside for questioning, whereupon the defendant became "belligerent" and refused to accompany the officers, throwing his car keys toward one of the

officers. Id. at **1-2. The officers and the defendant then proceeded outside, where the defendant began "'cussing'" and "'hollering'" and became "'*very* belligerent.'" Id. at *1 (emphasis added). One officer testified at trial that the defendant's conduct was violent or threatening "'[a]t sometimes.'" Id. The other officer also characterized the appellant's conduct as violent or threatening. Id. Nevertheless, this court concluded that the appellant's conduct did not rise above the level of mere belligerence. Id. at *2. Specifically, the court noted that the only possible threatening act was the throwing of the car keys by the defendant at one of the officers. Id. Yet, one of the officers described this act as "tossing," and "[n]either officer testified that he regarded the action as menacing." Id.

We conclude that the facts in the instant case are more analogous to the facts in Creasy than the facts in either Scott or Millsaps. In other words, we conclude that, although the appellant's obscenity did not alone constitute threatening behavior under Tenn. Code Ann. § 39-17-305(a)(1), the appellant's obscenity in conjunction with his behavior in throwing his driver's license at Officer Guldeman warranted the jury's finding of guilt.

In this regard, we note that, unlike the defendant in Scott, the appellant did not throw his driver's license across the parking lot. Rather, like the defendant in Creasy, he directed his action at the police officer. Moreover, unlike the defendant in Millsaps, the appellant did not "toss" his driver's license in the direction of the officer. Rather, he threw the license with sufficient force to strike the officer in the chest. Also, unlike the defendant in Millsaps, the defendant in this case began cursing at Officer Guldeman long before throwing his driver's license at the officer. In other words, unlike the encounter in Millsaps, the encounter in this case had escalated to a critical point at the time the appellant threw his driver's license. Finally, unlike the officers in Millsaps, Officer Guldeman testified that the appellant's behavior in throwing the driver's license appeared menacing. Thus, a "reasonable trier of fact" could have found that the appellant engaged in "threatening behavior" under Tenn. Code Ann. § 39-17-305(a)(1). Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Tenn R. App. P. 13(e). This issue is without merit.

### I.  Conclusion
For the foregoing reasons, we affirm the judgment of the trial court.

_____
Norma McGee Ogle, Judge